**Affirmed and Opinion filed July 12, 2012.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-11-00557-CR

---

**DOUGLAS LEE MCGOWAN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 268th District Court
Fort Bend County, Texas
Trial Court Cause No. 09-DCR-053153A**

---

## OPINION

Appellant Douglas Lee McGowan appeals his conviction for the third-degree felony offense of stalking, challenging the sufficiency of the evidence to support the

conviction and asserting the trial court erred in denying his request for a limiting instruction as to the extraneous-offense evidence. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged by indictment with stalking a former co-worker by, in relevant part, causing the co-worker or a member of her family to be placed in fear of bodily injury or death or fear that an offense would be committed against her property. Appellant pleaded "not guilty."

At trial, the State presented evidence that the co-worker/complainant and appellant at one time worked for the same company in Louisiana, though they did not work together in any capacity. The two first met in April 2005; the complainant rejected appellant's requests to go out for lunch and to give him her telephone number. A few months later, appellant approached the complainant at work and kept his hand on her shoulder even after she declined his request to talk. Some time later, in October 2005, appellant was terminated from the company's employment after he confronted the complainant and accused her of filing a sexual-harassment claim against him. At that point, the complainant believed that appellant was no longer permitted on the company's premises. But, shortly thereafter, she received a package at work from appellant along with a letter. In this letter, which was admitted into evidence at trial, appellant referred to the complainant as his "dream girl" and claimed that he "needed" her.

After this incident, the complainant contacted law enforcement authorities and supervisors at work, claiming to feel unsafe. One law enforcement officer contacted appellant and told him that the complainant did not wish to receive communications from him; appellant indicated that he would leave the complainant alone. But, he did not.

The complainant decided to change jobs in August 2006, because appellant was still able to enter her workplace, and appellant's father, who worked for the same employer, had been promoted to head of security at the company.

The complainant had begun receiving telephone calls from appellant in February 2006. She applied for a Louisiana restraining order against him in March 2006; the order was granted a few months later. Despite the existence of the restraining order, appellant placed telephone calls to the complainant between May 2006 and November 2006. During roughly the same time period, the complainant also received emails from appellant via a social networking website. Appellant requested to be friends with the complainant on the social media webpage. In one email, appellant stated, "[N]o matter what it costs me, even at the expense of my own life, I will not let you benefit in the least for treating me the way you have." As reflected in some of appellant's emails, the complainant had not responded to any of appellant's attempts to communicate with her. The emails served as the complainant's basis for obtaining renewal of the restraining order in November 2006 and again in May 2007; the record reflects that appellant was served with only the May 2007 restraining order. Ultimately, the complainant cancelled her membership with the social networking website in order to avoid contact with appellant.

In her attempts to renew the restraining order, the complainant discovered a blog entry, dated June 2007, associated with appellant's social networking webpage in which appellant expressed hatred for the complainant, a desire for the complainant to die, and a desire to hurt the complainant or anyone who might help her. The complainant's mother also discovered another blog entry, dated December 2007, that was associated with appellant's social networking website and that made reference to the complainant and identified appellant's occupation as "hit man," causing both the complainant and her mother to fear for their safety.

In July 2007, prompted by the discovery of appellant's June 2007 blog entry, the complainant obtained a job transfer and moved to the Houston metropolitan area. She attempted to keep her phone number and address from being accessible to the public. When it was necessary to provide an address, the complainant would often provide her

3

parents' address rather than reveal her own. Upon expiration of the Louisiana restraining order, she tried, but was unable, to procure a restraining order in Texas. The complainant's former neighbor from Louisiana testified that in August 2009, after the complainant had moved to Texas, a man fitting appellant's description visited the complainant's former apartment and asked questions about the complainant's whereabouts.

Appellant's stepbrother contacted the complainant several times by telephone in August 2009; the stepbrother was aware of the prior restraining orders against appellant and attempted to warn the complainant that appellant had plans to visit the Houston area with the specific intention of seeing the complainant. Fearing that appellant would kill her or hurt her parents, the complainant and her mother again contacted law enforcement authorities. When appellant arrived in the Houston area, the stepbrother attempted to discourage him from searching for the complainant. The stepbrother would not allow appellant to stay in the stepbrother's home if appellant attempted to locate the complainant; appellant did not stay with the stepbrother and insisted on attempting to find the complainant, whose home was several blocks away from the stepbrother's home.

During this same time frame, appellant was spotted several times in the complainant's parents' neighborhood, including on one occasion on August 14, 2009, in which the complainant's mother saw appellant looking into the window of the parents' home and pounding on the door. The complainant's mother notified authorities. Both the complainant and her mother feared for their safety. After responding officers left the parents' home, appellant called the home asking to speak with the complainant. A responding officer returned and followed the mother's vehicle to the complainant's home to ensure the complainant's safety. As they drove from the neighborhood, the officer observed a vehicle fitting the description of appellant's vehicle and identified appellant as the driver based on his driver's license. The officer explained to appellant that he was not welcome in that area; appellant appeared to understand and agreed to leave the area.

4

Two days later, another officer familiar with the incident identified appellant from his driver's license as being associated with a suspicious vehicle in the same neighborhood. Appellant was playing a guitar in a grassy area near the complainant's parents' home; he told the officer that he knew the complainant's family and wanted to speak with the complainant. The officer told appellant that the complainant's family did not want him near their home and escorted him from the neighborhood.

The jury found appellant guilty as charged and assessed punishment for the third-degree felony at four years' confinement.

Challenging his conviction, appellant asserts in his first issue that the evidence is insufficient to support the stalking conviction. In a second issue, appellant asserts that the trial court erred in denying his request for a limiting instruction as to extraneous-offense evidence.

**SUFFICIENCY OF THE EVIDENCE**

In evaluating a legal-sufficiency challenge, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The trier of fact "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

A person commits the felony offense of stalking if that person, on more than one occasion and pursuant to the same scheme or course of conduct directed specifically at another person, knowingly engages in conduct, including following the other person, that: (1) the actor knows or reasonably believes the other person will regard as threatening bodily injury or death for the other person or for a member of the other person's family or household; (2) causes the other person or a member of the other person's family or household to be placed in fear of bodily injury or death or fear that an offense will be committed against the person's property; and (3) would cause a reasonable person to fear: bodily injury or death for herself; bodily injury or death for a member of the person's family or household; or that an offense will be committed against the person's property. Tex. Penal Code Ann. § 42.072(a) (West Supp. 2011). The indictment alleged conduct by appellant occurring from August 1, 2009 to August 17, 2009, constituting the offense of stalking.

The State presented evidence that since 2005, appellant had attempted repeated contact and communications with the complainant, causing her to transfer jobs, obtain restraining orders against appellant, and move to another state out of fear for her own safety. These unwanted contacts included telephone calls, letters left at the complainant's workplace, emails sent to the complainant via appellant's social networking webpage, and blog entries associated with appellant's social networking webpage in which he expressed a desire to hurt the complainant or those who helped her. Evidence of incidents that occurred before the date alleged in the indictment are relevant to the requirement that the State prove that the complainant was placed in fear of bodily injury or death at the time of the accused's conduct. *See Clements v. State*, 19 S.W.3d 442, at 448, 451, 452 (Tex. App.—Houston [1st Dist.] 2000, no pet.). In August 2009, appellant traveled from Louisiana to Texas with specific plans to locate the complainant even

6

though his stepbrother discouraged the idea on the basis of the restraining orders. Twice, once on August 14, 2009 and again on August 16, 2009, officers observed appellant in the complainant's parents' Houston-area neighborhood. On each occasion, the officer told appellant that the complainant's family did not want him in the neighborhood, and escorted him from the area; each time appellant appeared to understand and agreed to leave. On at least one of those occasions, the complainant's mother saw appellant peering in the windows of her home and pounding on the door, which was later followed by a telephone call from appellant in which he sought to speak with the complainant.

Appellant asserts that his interactions with the complainant were too widely separated in time to be considered a scheme or course of conduct directed at the complainant. Section 42.072 of the Penal Code, entitled "Stalking," requires conduct occurring on more than one occasion and pursuant to the same scheme or course of conduct. *See* Tex. Penal Code Ann. § 42.072. But, the statute does not specify a time period in which the conduct must occur. *See Pomier v. State*, 326 S.W.3d 373, 379–80 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *Hutton v. State*, 313 S.W.3d 902, 908 (Tex. App.—Amarillo 2010, no pet.). The offense of stalking contemplates the presentation of evidence that covers the entire course of alleged unlawful conduct specifically directed toward a complainant. *Pomier*, 326 S.W.3d at 380. The evidence in the record reflects that from 2005 to 2009, appellant repeatedly attempted unwanted contact with the complainant by letter, telephone, and via online social media at the complainant's home or workplace and then followed the complainant to another state, appeared several times in the complainant's parents' neighborhood, and called the parents' home to speak with the complainant. Viewing the evidence in the light most favorable to the verdict, a rational jury could have found beyond a reasonable doubt that appellant's conduct amounted to a scheme or course of conduct. *See id.* (concluding conduct from 1993 to 2007 was sufficient to support conviction for stalking when an accused threatened to hurt a complainant, continuously called the complainant at home and work, drove past the complainant's home on many occasions, and often sat in a

7

vehicle outside the complainant's home, causing the complainant to apply for and receive protective orders).

Appellant characterizes the complainant's testimony and the mother's testimony as contradictory, inconsistent, speculative, and embellished in terms of whether the complainant feared that appellant would kill or hurt the complainant or her parents. The jury was the exclusive judge of the credibility of the witnesses and the weight to give witnesses' testimony. *See Fuentes*, 991 S.W.2d at 271.

In support of his argument, appellant asserts his conduct could not be viewed as threatening bodily injury or death when the mother testified that she never saw appellant following the complainant. Conduct also can be directed at a family member. *Hansen v. State*, 224 S.W.3d 325, 328–29 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). The record reflects that the complainant feared for her safety and for her parents' safety and that she contacted law enforcement authorities several times and applied for and obtained a restraining order against appellant several times. *See Pomier*, 326 S.W.3d at 381. An officer who arrived at the parents' home on August 14, 2009, testified that the complainant's mother feared that appellant would harm her or the complainant when the complainant's mother saw appellant peering in the window and pounding on the door; later, appellant called the home to speak with the complainant. *See id.* In viewing the evidence, a rational jury could have found beyond a reasonable doubt that appellant's conduct caused the complainant or her mother to be placed in fear of bodily injury or death. *See id.* To the extent appellant asserts the record contains no evidence that he broke into any homes, physically assaulted the complainant or her family, or destroyed any property, these are not elements to be proven in attaining a stalking conviction under section 42.072. *See* Tex. Penal Code Ann. § 42.072. There is no requirement that a complainant or a family member actually sustain injury or harm from an accused's conduct. *See Clements v. State*, 19 S.W.3d 442, 448 (Tex. App.—Houston [1st Dist.] 2000, no pet.).

8

Appellant also asserts the evidence is insufficient to establish that he possessed the requisite culpable mental state because he could not have known or reasonably believed that the complainant or her mother would regard his conduct as threatening bodily injury or death. A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. Tex. Penal Code Ann. § 6.03(b) (West 2011). A person acts knowingly or with knowledge, with respect to a result of his conduct, when he is aware that his conduct is reasonably certain to cause the result. Proof of a culpable mental state invariably depends on circumstantial evidence and may be inferred from any facts tending to prove its existence, including the acts, words, and conduct of the accused. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002); *Pomier*, 326 S.W.3d at 381. The complainant applied for and received a restraining order against appellant three times; appellant was served with one of the orders in May 2007. Despite the restraining orders, he continued to pursue contact with the complainant and expressed a desire to hurt the complainant or those who helped her. Appellant was told repeatedly by law enforcement officers and even his own stepbrother that he should leave the complainant and her family alone; the record reflects that appellant had agreed each time to leave the complainant alone. Appellant's decision to ignore these warnings from his stepbrother and law enforcement officers reveals appellant's knowledge regarding his conduct. *See Pomier*, 326 S.W.3d at 381. Given the testimony from the complainant and the complainant's mother, along with observations of law enforcement officers, a rational jury could have inferred that appellant knew or reasonably believed that the complainant or her mother would view his conduct as threatening bodily injury or death. *See id.*

We conclude a rational jury could have found that appellant's conduct satisfied the essential elements of the offense of stalking beyond a reasonable doubt. *See id.* The record evidence is sufficient to support appellant's stalking conviction. Accordingly, we overrule appellant's first issue.

9

## DENIAL OF REQUEST FOR LIMITING INSTRUCTION

In his second issue, appellant asserts the trial court reversibly erred in failing to instruct the jury with "the proper wording of the extraneous offense charge." Claiming that the trial testimony repeatedly raised the issue of unspecified extraneous-offense evidence, appellant asserts the trial court erred in denying his request for a limiting instruction in the jury charge. Appellant cites the record for the trial court's rulings following a bench conference on these matters.

The record reflects that appellant presented a motion in limine to the trial court as to unspecified extraneous-offense evidence of appellant's conduct prior to August 1, 2009 through August 17, 2009, as alleged in the indictment. The trial court ruled that the State could show appellant's extraneous-offense conduct leading up to the dates charged in the indictment, even if each act is not a criminal act, as long as the actions are consistent with and relate to elements of the charged offense.

Several times during trial, appellant approached the bench with an objection that the State was delving into extraneous-offense incidents. During one bench conference, appellant asserted that unspecified extraneous-offense evidence also constituted inadmissible hearsay. The trial court ruled that if appellant raised a hearsay objection, then the State would be responsible for eliciting testimony within an exception to the general prohibition on hearsay. Following this bench conference, the complainant testified without any objection from appellant that there was another unspecified incident in March 2006 involving appellant that prompted her to summon law enforcement officers to her home and eventually to apply for the first restraining order against appellant.

In another bench conference, appellant raised an objection to the admission of the emails sent from appellant to the complainant on the grounds that the emails amounted to extraneous-offense evidence that also was inadmissible under Texas Rule of Evidence 404(b). The trial court ruled that the emails were admissible. When the State sought to

offer the emails into evidence, appellant objected to the admission of the emails as lacking authentication, lacking predicate, and not qualifying as business records. The trial court overruled these objections, too.

At a third bench conference, appellant made reference to case law requiring him to request a limiting jury instruction after extraneous-offense evidence is admitted. The trial court indicated that no evidence supporting any extraneous acts had been admitted. When appellant asked for a limiting instruction for the jury charge, the trial court stated that it would consider the request at the time of the charge conference.

At a fourth bench conference, following the complainant's reference to her discovery of appellant's December 2007 blog entry on the social networking website, appellant objected to the admission of the December 2007 blog entry as improper character evidence under Rule of Evidence 404(b), stating "[t]he same thing as the extraneous act." The State indicated that it planned to offer the evidence during the complainant's mother's testimony because she was one who discovered the online entry. The trial court allowed the complainant to verify that the blog-entry document was the same blog entry that she had seen, but the trial court did not permit the complainant to testify to the contents of the entry.

At a fifth bench conference, during the complainant's mother's testimony, appellant reurged his extraneous-offense objection to the contents of the December 2007 blog entry. The trial court overruled the objection on the basis that the indictment also alleged that a member of the complainant's family was placed in fear of bodily injury or death.

At the charge conference, appellant objected to the jury-charge instruction and requested a limiting instruction that extraneous acts could be considered by the jury only for purposes of the intent, plan, "element," and state of mind of the accused, and for no other purpose. The trial court denied appellant's request. The jury charge reflected the following instruction in pertinent part:

11

You are instructed that if there is any testimony before you in this case regarding the defendant's having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed.

If a defendant does not request a limiting instruction at the time evidence is admitted, the trial court has no obligation later to limit the use of the evidence in the jury charge. *See Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007). Once evidence has been admitted without a limiting instruction, it is part of the general evidence and may be considered by the jury for all purposes. *Id.* Appellant requested a limiting instruction one day after the admission of the emails and did not request another limiting instruction until the charge conference. *See id.* Because appellant did not request the limiting instruction when the objectionable evidence was introduced, the evidence was admitted for all purposes, and he was not entitled to a limiting instruction in the jury charge. *See id.*

Nevertheless, evidence of incidents that occurred before the dates specified in the indictment (in this case, August 1, 2009 through August 17, 2009) are admissible in a stalking prosecution as being relevant to the requirement that the State prove that the complainant was placed in fear of bodily injury or death at the time of the accused's conduct, as required by Penal Code section 42.072(a). *See Clements*, 19 S.W.3d at 448, 451, 452; *see also* Tex. Penal Code Ann. § 42.072(a). Although appellant does not specify in his appellate brief exactly what extraneous-offense evidence prompted his request for a limiting instruction, the emails and the December 2007 blog entry, as reflected in the record, would have been admissible to establish the complainant's fears at the time of the alleged conduct. *See id.* When extraneous-offense evidence is offered to prove a main fact in the State's case, no limiting instruction is required. *See Porter v. State*, 709 S.W.2d 213, 215 (Tex. Crim. App. 1986). Appellant's second issue is overruled.

The trial court's judgment is affirmed.


                                    /s/     Kem Thompson Frost
                                            Justice


Panel consists of Justices Frost, McCally, and Mirabal.[*]

Publish — TEX. R. APP. P. 47.2(b).

---

[*]Senior Justice Margaret Garner Mirabal sitting by assignment.