**Affirmed as Modified and Opinion filed November 20, 2014.**



In The

# Fourteenth Court of Appeals

## NO. 14-13-00896-CR

**LIONELL DEWAYNE WEST, appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 239th District Court
Brazoria County, Texas
Trial Court Cause No. 66169**

## O P I N I O N

Appellant, Lionell Dewayne West, appeals from his conviction for burglary of a habitation. A jury convicted him and assessed his punishment at 18 years in prison. In his first two issues, appellant contends that his trial attorney provided ineffective assistance of counsel during both the guilt-innocence and punishment phases of trial. In his third issue, appellant contends that the evidence was insufficient to establish his ability to pay the attorney's fees assessed against him.

We modify the judgment to remove the assessment of attorney's fees and affirm as modified.

## I.    Background

Appellant was charged with burglary of a habitation occurring on August 15, 2011. The complainant, Deputy Sherriff William Wages, had arrived home at 5:30 a.m. to discover his wife's vehicle, a 2007 Hyundai Tucson SUV, stolen and his house burglarized. Wages' wife and children had slept through the intrusion. Missing from the home were a number of electronic devices,[1] two purses, handcuffs, prescription medication, and a camera bag containing a police pin/ribbon.

On August 16, the vehicle was found abandoned in the parking lot of a Bay City HEB with a broken window and damage to the vehicle's front end. Surveillance video of the HEB parking lot revealed two individuals had been inside the vehicle, identified by Angleton Investigator Jarvis Wood as appellant and Kimberly Washington, who was appellant's girlfriend and the mother of his two children. Wood testified that investigation of the Cash Cow Pawn Shop, located adjacent to the HEB, revealed that appellant had recently pawned a gold necklace, although this necklace was not among the items stolen from the Wages' home.

On August 19, appellant was arrested at the Paradise Inn Motel, after a disturbance was reported at this location. Inside the motel room appellant had occupied, investigators found keys to the stolen SUV, Wages' missing police pin/ribbon, and a prescription bottle with appellant's name on it.

Washington testified that appellant routinely traded drugs for the use of cars.

---

[1] Among the electronics missing were a VCR, e-book readers, cell phones, a camcorder, and a laptop.

2

She further explained that this arrangement is known as a "dope fee rental," and she assumed this was how appellant obtained the Wages' SUV. Defense counsel made no immediate objection to this testimony but did object when Washington began discussing past drug fee rentals which she had witnessed. The prosecution also questioned Washington regarding the tattoo on her neck, which she described as being either appellant's name or his nickname, "Black Jesus."[2]

Detective Corporal Scott Sherrill testified that appellant had entered Cash Cow Pawn Shop and pawned a golden necklace, which was entered into evidence. The pawn shop is located next to the HEB parking lot where the Wages' SUV was found. The golden necklace was later referenced in the prosecution's closing argument as "evidence that [appellant] is trying to get rid of stolen property."[3]

Following an outburst by appellant during the prosecution's closing argument,[4] the prosecution commented on appellant's facial tattoos, stating:

> Look at the man. He's got a tattoo on his face. Does he make sense? Does it make sense that he gets up and argues with me in my closing argument? Does that make sense? No. Nothing about Lionell West

---

[2] The prosecutor questioned Washington as follows:

Q: On the right part of your neck, can you show the jury the tattoo?

. . . .

Q: And what's that say?

A: It either says Lionell West or Black Jesus. I don't know.

….

Q: And who is Black Jesus?

A: It's his nickname.

[3] The prosecutor asserted that the pendant was stolen, asking the jury "[w]hat's he doing with a diamond pendant? What's he doing with a lady's gold diamond pendant? What does that prove? Well, it wasn't the diamond pendant from this case. . . . It's more evidence that he is trying to get rid of stolen property."

[4] Appellant shouted to the prosecutor "you can't prove it. You can't prove it."

3

makes sense. Why would we give him reason—why would we consider him a reasonable person? Why? Because it's pretty typical that people tattoo BK on their face.

Defense counsel objected to this statement, and the court sustained the objection. The prosecution responded by again pointing to appellant's facial tattoo as evidence of unreasonableness, though no subsequent objection was raised.[5]

In closing argument, defense counsel conceded that appellant was a "bad fellow," and "Mr. West is not the best, most law-abiding citizen in the world."[6] These were two of several negative remarks made by defense counsel as he argued that the evidence pointed to appellant having obtained the stolen SUV through a drug trade, rather than by personally burglarizing the Wages' home.

During the punishment phase, appellant was the only party to testify on his behalf. The direct examination of appellant included a discussion of his family, mental health issues, attitude towards law enforcement, and inability to hold a regular job, highlighted by his departure from a previous job at Burger King after striking a man with a hammer.[7] The prosecution further questioned appellant on his criminal record, emphasizing his lack of respect for legal authority, and the fact that his children were present with him at the time of his arrest.

Appellant was charged with burglary of a habitation, a second degree felony,

---

[5] After the objection, the prosecutor stated: "I'm not asking you to convict him on his appearance. I'm asking you: Does he look like a reasonable person with the tattoo on his face? How—why? What about his behavior suggests reasonableness?"

[6] Defense counsel stated:

And I have to trust you that even though you might know that Mr. West is not the best, most law-abiding citizen in the world, the prosecution has not proven their case and not provided you the evidence that he's the kind of guy that sneaks into people's houses while they're there, while their children are there and take their property.

[7] Defense counsel admitted before the jury that he was not expecting appellant to answer a question with an account of striking a man in the face with a hammer.

carrying a punishment range of not more than 20 years or less than two years. Tex. Penal Code § 12.32. The court sentenced appellant to 18 years in prison and ordered him to pay $2,106 in attorney's fees, despite the fact that he had been determined to be indigent.

## II.    Ineffective Assistance During Guilt/Innocence Phase

In his first issue, appellant contends that his trial counsel provided ineffective assistance throughout the guilt-innocence phase of the trial. Specifically, appellant cites eight instances that he contends demonstrate counsel's failure to provide effective assistance:   (1) failing to object to testimony that appellant borrowed cars in exchange for drugs; (2) failing to call for a mistrial following testimony that appellant borrowed cars in exchange for drugs; (3) eliciting damaging testimony which reinforced appellant's history of borrowing cars in exchange for drugs; (4) failing to object to the admission of a necklace pawned by the appellant; (5) failing to object to closing argument by the prosecution referring to the necklace as stolen property, despite a lack of evidence that it was, in fact, stolen; (6) failing to object sufficiently to the prosecution's closing argument referencing appellant's tattoos; (7) failing to object to evidence establishing appellant's nickname as "Black Jesus"; and (8) conceding in closing argument that appellant was a "bad guy."

## A. Legal Standard

An appellate court reviews the effectiveness of counsel according to the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Under this standard, a defendant must (1) demonstrate that the trial counsel's performance was deficient and fell below an objective standard of reasonableness, and (2) "affirmatively prove prejudice by showing a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

Review of a trial counsel's performance is highly deferential, as there is a "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance; that is, [appellant] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. Ordinarily, trial counsel should be afforded an opportunity to explain his or her actions, and in the absence of such opportunity, an appellate court should not find deficient performance unless the challenged conduct was so outrageous that no competent attorney would have engaged in it. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). To establish ineffective assistance of counsel based on a failure to object, appellant must demonstrate that the trial court would have committed harmful error in overruling the objection had trial counsel objected. *DeLeon v. State*, 322 S.W.3d 375, 381 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). The appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective, and any allegations of ineffectiveness must be firmly founded in the record. *Thompson*, 9 S.W.3d at 813.

## B. Analysis

Appellant argues that trial counsel's ineffective assistance led the jury to convict appellant, not for the burglary of a habitation, but for his extraneous bad acts and character. Evidence of character traits, extraneous crimes and bad acts, which is not otherwise relevant, is inadmissible. Tex. R. Evid. 404(b); *see also Montgomery v. State,* 810 S.W.2d 372, 386-87 (Tex. Crim. App. 1990). However, "a party may introduce such evidence where it logically serves to make more probable or less probable an elemental fact," provided the probative value of the evidence is "not substantially outweighed by the danger of unfair prejudice,

confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." *Montgomery*, 810 S.W. 2d at 387 (quoting in part Tex. R. Evid. 403).

Appellant first points to three instances of alleged ineffective assistance stemming from his trial counsel's presentation of evidence of appellant's history as a drug dealer, as well as counsel's failure to object to the prosecution's evidence of the same. However, the state argues that this was an effective and necessary strategy, citing several cases in support of the proposition that admitting to poor character or extraneous crimes does not necessarily equal ineffective assistance of counsel. *See Tello v. State*, 138 S.W.3d 487, 494-96 (Tex. App.—Houston [14th Dist.] 2004) (affirming where trial counsel admitted defendant's negligence in criminal negligent homicide case), *aff'd*, 180 S.W.3d 150 (Tex. Crim. App. 2005); *Belton v. State*, 900 S.W.2d 886 (Tex. App.— El Paso 1995, pet. ref'd) (affirming where trial counsel admitted defendant's having committed aggravated robbery as part of strategy against capital murder charge); *Jordan v. State*, 859 S.W.2d 418 (Tex. App. — Houston [1st Dist.] 1993, no pet.) (affirming where trial counsel admitted the defendant's guilt in closing argument in the hope of securing more favorable sentencing). By establishing that appellant had a history of obtaining vehicles in exchange for drugs, trial counsel sought to provide an alternative explanation for appellant's possession of the stolen vehicle, thus creating reasonable doubt that appellant committed the burglary. In light of the evidence against appellant, this may have been a reasonable strategy.

Furthermore, defense counsel can only present the evidence that is available. This may sometimes lead to a choice between presenting potentially harmful evidence or no evidence at all. Without a motion for new trial or habeas corpus hearing, we are unable to determine what facts appellant relayed to defense

counsel, and what, if any, alternative legal strategies defense counsel chose to disregard. It may be that framing appellant's possession of the Wages' stolen SUV in exchange for drugs was appellant's only available strategy. *See Garza v. State*, 213 S.W. 3d 338, 348 (Tex. Crim. App. 2007) ("Counsel's reasons for his actions or intentions do not appear in the record, and his conduct could have been part of a reasonable trial strategy. Without more, we must defer to counsel's decisions and deny relief."); *Ortiz v. State*, 93 S.W.3d 79, 88-89 (Tex. Crim. App. 2002) ("If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal."); *McNeil v. State*, 174 S.W.3d 758, 760 (Tex. App.—Waco 2005, no pet.) ("[I]f nothing in the record reveals trial counsel's reason, it is improper for [the court] to speculate on it."). Consequently, presenting evidence of appellant's history of exchanging drugs for usage of a vehicle does not demonstrate outrageous or clearly deficient performance.

In a related claim of ineffective assistance, appellant points to trial counsel's closing argument, in which appellant was referred to as a "bad guy" and a "criminal generally" who "traded drugs for the use of this car." As discussed above, this may have been part of defense counsel's strategy to provide an alternative explanation for how appellant gained possession of the stolen vehicle and was not guilty of the crime charged. Thus, it does not necessarily rise to the level of ineffective assistance of counsel.

Next, appellant claims that trial counsel failed to object sufficiently when the prosecution pointed to appellant's facial tattoo as evidence of his unreasonableness. The record shows that trial counsel objected the first time the prosecutor mentioned the tattoo and that this objection was sustained. However,

trial counsel did not to object to the second mention of the tattoo, which appellant claims is ineffective assistance. Having already successfully objected once, trial counsel may not have seen value in objecting a second time. The error was insufficient to merit a mistrial, and objecting a second time would only draw further attention to the issue. *See Huerta v. State*, 359 S.W.3d 887, 894 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (holding that counsel "may have . . . decided to withhold objections to avoid drawing unwanted attention to a particular issue, or to prevent the impression that she was objecting at every opportunity as a means of stonewalling evidence."). The record does not provide any insight into defense counsel's true reasoning. *See Ortiz*, 93 S.W.3d at 88-89. As such, this failure to object does not overcome the strong presumption that counsel performed within reasonable standards. *Thompson v. State*, 9 S.W.3d 808, 814-15 (Tex. Crim. App. 1999) (holding defense counsel's failure to object to admission of inadmissible evidence for a third time did not overcome the strong presumption of effective assistance).

Concerning testimony about the nickname "Black Jesus," appellant contends that calling attention to his nickname likely aroused the hostility of the jury, and trial counsel's failure to object constituted ineffective assistance. Relevant evidence is inadmissible when its probative value is substantially outweighed by danger of unfair prejudice. Tex. R. Evid. 403. Evidence is unfairly prejudicial if it carries an undue tendency to suggest decision on an improper basis. *Rogers v. State*, 991 S.W. 2d 263, 266 (Tex. Crim. App. 1999). In the present case, Washington had appellant's name or nickname tattooed on her neck. This fact suggests a strong emotional connection between Washington and appellant. The tattoo therefore creates a question of bias, possibly affecting the weight of any testimony by Washington in support of appellant. *See* Tex. R. Evid. 613(b)

(stating in relevant part that a witness may be impeached by "proof of circumstances or statements showing bias or interest" of the witness).

Appellant has failed to provide any explanation as to how prejudice from Washington's statement regarding his nickname substantially outweighs the probative value of demonstrating her potential bias. *DeLeon* 322 S.W.3d at 381 (finding that the first prong of *Strickland* had not been met where the appellant offered no argument as to whether evidence would have been properly admitted). In fact, on this issue, appellant's brief offers nothing more than an unsupported statement that the mention of his nickname was an attack on appellant's character. Due to the likelihood that the testimony is admissible, defense counsel's failure to object did not rise to the level of deficient performance. *See Olivia v. State*, 942 S.W.2d 727, 732 (Tex. App.—Houston [14th Dist.] 1997, pet. dism'd) ("Trial counsel's failure to object to admissible evidence does not constitute ineffective assistance of counsel.").

Lastly, appellant argues trial counsel rendered ineffective assistance by failing to object to either the evidence that appellant had pawned a necklace, or the prosecution's statement in closing argument that pawning the necklace was evidence that appellant was trying to pawn stolen property, when the necklace was not listed as stolen in this burglary. The introduction of the necklace into evidence had at least some relevance in that it helped tie appellant to the SUV abandoned in the nearby HEB parking lot. However, by stating that appellant had recently pawned a stolen necklace, the prosecution tied appellant to a crime of which there is no evidence and may have implied that appellant escaped punishment from an earlier theft. Had trial counsel properly objected to this statement, error may have resulted if the judge overruled the objection. *See DeLeon* 322 S.W.3d at 381.

The state urges that counsel's failure to object does not meet the standard of

ineffective assistance and cites to a number of cases in which a guilty verdict was affirmed under similar circumstances. *See Huerta*, 359 S.W.3d at 894 (affirming where trial counsel failed to object to the details of a prior conviction and possible gang affiliation used for impeachment); *Haagensen v. State*, 346 S.W.3d 758, 765-67 (Tex. App. —Texarkana 2011, no pet.) (rejecting ineffective assistance claim where counsel failed to object to the admission of hearsay evidence in a search warrant that included references to drug paraphernalia found in the defendant's possession, defendant's prior arrests, and his possession of a drug ledger). Yet, despite the similarities, the cases cited by the State can be differentiated in one key way: in *Huerta and Haagensen*, the courts held that trial counsel may have strategically remained silent in order to avoid appearing to hide key facts. *Huerta*, 359 S.W.3d at 894; *Haagensen*, 346 S.W.3d at 765-67. In the present case, there was nothing to hide, as there was no evidence that the necklace was stolen. There is a clear distinction between the introduction of facts not in evidence and the introduction of information with no basis in fact. There is no rational basis for remaining silent under the circumstances. For this reason, the failure to object may satisfy the first prong of the *Strickland* test by demonstrating deficient performance. *See Brown v. State*, 974 S.W. 2d 289, 293-94 (Tex. App.—San Antonio 1998, pet. ref'd) (holding that extraneous offenses are inherently prejudicial and finding ineffective assistance of counsel where counsel failed to object to unrelated drug evidence).

In the event that the first prong of *Strickland* is satisfied, the question becomes whether the appellant has affirmatively proven that the outcome of the proceeding would have been different but for the trial counsel's error. *Strickland*, 466 U.S. at 693 ("[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively

11

prove prejudice."). This question presents considerable difficulty, as it is impossible to look into the minds of the jurors to determine how they may have voted under different circumstances. To attempt to replicate the jury's mindset, a court must look to the totality of the evidence, taking into account the strength of evidence on the record. *Strickland,* 466 U.S. at 695-96 ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.").

We begin by noting that despite the circumstantial nature of the evidence against appellant, the effect of the prosecution's remarks was merely cumulative, rather than outcome determinative. Appellant's trial strategy was dependent upon his admission that he obtained stolen property, such as the Wages' SUV, in exchange for drugs. Because the prosecution did not assert that appellant stole the necklace himself, the statement that appellant was "trying to get rid of stolen property" does not necessarily suggest appellant was guilty of anything beyond that which appellant himself had previously admitted.

Additionally, there is ample evidence on the record to support the guilty verdict, regardless of the gold necklace. *See Ex parte Martinez*, 330 S.W. 891, 904 (Tex. Crim. App. 2011) (holding that the second prong of *Strickland* had not been met when there was ample evidence to support finding of guilt). Appellant was found in possession of the Wages' stolen vehicle keys and police pin, and additional evidence tied him to possession of the stolen SUV. While his defense appeared to be that he received the stolen goods from another individual as part of a drug deal and not by stealing them himself, he did not provide any specific proof in support of this theory, much less identify the other individual at trial. As the ultimate deciders of fact, the jury had sufficient evidence to find appellant guilty or to disregard his drug fee rental defense. We cannot say there is a reasonable

12

probability that the jury, in light of all the evidence presented, would have reached a different conclusion absent the mention of the gold necklace. *See id.* Consequently, appellant has not met his burden of affirmatively proving that, but for trial counsel's error, the outcome of the trial would have been different. Accordingly, we overrule appellant's first issue.

### III.    Ineffective Assistance During Punishment Phase

In his second issue, appellant complains that his trial counsel provided ineffective assistance by calling on him to testify during the punishment phase of the trial. Placing appellant on the stand opened him up to cross-examination,[8] and counsel's own questioning highlighted appellant's disregard for law enforcement, as well as revealing that he left a previous job after striking a man in the face with a hammer. As with the guilt/innocence phase of trial, the standard is the two-pronged *Strickland* test. *Hernandez v. State*, 988 S.W.2d 770, 771 (Tex. Crim. App. 1999) (holding ineffective assistance of counsel may be grounds for overturning a noncapital sentencing proceeding).

The record is silent as to defense counsel's strategy during the punishment phase. *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002) ("Generally the record on direct appeal will not be sufficient to show that counsel's representation was so deficient as to meet the first part of the *Strickland* standard."). It is likely that trial counsel sought to show that appellant was not a hardened criminal; rather, he was a young man who grew up in an environment where skirting the law was viewed as a game.[9]

---

[8] Cross-examination revealed that appellant's children were with him at the time of arrest and he was cited for masturbating in jail, and it emphasized appellant's criminal history.

[9] Appellant compared running from the cops to the video game Grand Theft Auto, stating he and his friend's "might throw a rock at the cop car and we'll all take off running because we think it's fun and games . . . . [W]e like to get chased by the cops because we thought it was

The apparent inability of trial counsel to find a single available witness to testify on appellant's behalf may also have motivated trial counsel to call appellant to the stand, believing that calling the appellant to testify was better than calling no one.[10] Another possibility is that appellant desired to take the stand. A criminal defendant has a constitutional right to testify on his own behalf, and trial counsel may not waive this right over the defendant's objection. *See Rock v. Arkansas*, 483 U.S. 44, 49 (1987); *Carballo v. State*, 303 S.W. 3d 742, 754 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) ("[A]n accused's right to testify on his own behalf is fundamental and personal to the accused."). Appellant's brief makes no mention of trial counsel's advice regarding testifying. *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002) ("Ineffective assistance of counsel claims are not built on retrospective speculation; they must be firmly founded in the record.").

Considering the lack of explanation in the record concerning trial counsel's motivation or strategy, appellant has not overcome the strong presumption that counsel's performance was adequate. Accordingly, we overrule appellant's second issue.

## IV. Attorney's Fees

In his third issue, appellant contends the evidence was insufficient to establish his ability to pay the attorney's fees assessed against him. When a trial court determines that a defendant has resources enabling him to offset, in part or in whole, the costs of legal services provided, it has the authority to order reimbursement of an appointed attorney's fees. Tex. Code Crim. Proc. art. 26.05(g); *Mayer v. State*, 274 S.W.3d 898, 901 (Tex. App.—Amarillo 2008), *aff'd*,

---

fun."

[10] Appellant testified that he instructed defense counsel to contact his grandmother and sister regarding testifying on his behalf; however, his grandmother was unable to attend due to poor health, and his sister was serving in the Army overseas.

309 S.W.3d 552 (Tex. Crim. App. 2010). However, absent evidence of the defendant's financial resources, such reimbursement may not be ordered. *Wolfe v. State*, 377 S.W.3d. 141, 144 (Tex. App.—Amarillo 2012, no pet.) ("[N]ot only must the trial court make a determination regarding the defendant's ability to pay, the record must reflect some factual basis to support that determination."); *Mayer*, 274 S.W.3d at 901 ("Without evidence to demonstrate appellant's financial resources to offset the costs of the legal services, the trial court erred in ordering reimbursement of appointed attorney fees.").

In the present case, the record contains no evidence of appellant's ability to pay for legal representation. To the contrary, the trial court found appellant to be indigent when it appointed his appellate counsel. In light of these facts, the trial court erred in assessing $2,106.00 in attorney's fees. The state, in fact, concedes error on this issue. When the evidence does not support an order to pay attorney's fees, the proper remedy is to delete the order. *Wolfe*, 377 S.W.3d at 146. Consequently, we sustain appellant's third issue and delete the assessment of attorney's fees.

We modify the judgment to remove the assessment of attorney's fees, and affirm as so modified.


/s/    Martha Hill Jamison
       Justice


Panel consists of Justices Boyce, Jamison, and Donovan.
Publish — TEX. R. APP. P. 47.2(b).