

# NUMBER 13-13-00418-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

GARY GREEN,                                                    Appellant,

v.

THE STATE OF TEXAS,                                            Appellee.

## On appeal from the 390th District Court
of Travis County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Memorandum Opinion by Justice Rodriguez

Appellant Gary Green appeals from a judgment rendered by the 390th District

Court of Travis County, Texas.[1]   The jury found Green guilty of robbery and sentenced

him to prison for ninety-nine years.   Green raises three issues on appeal contending that

---

[1] This case is before the Court on transfer from the Third Court of Appeals in Austin pursuant to a docket equalization order issued by the Supreme Court of Texas.   *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2013 3d C.S.).

he received ineffective assistance of counsel and that there was error in the jury charge. We affirm.

## I.   BACKGROUND

Lena Hoffman testified that on the evening of July 2, 2012, she took her laptop to Comal Park in Austin, Texas, where she could use the park's wireless internet. Green approached Hoffman while she was at the park. Hoffman asked Green to "leave her alone" and moved away from him. Green followed her and said, "I'm going to take your sh—," and attempted to take her laptop. He assaulted Hoffman, punching her in the face and head multiple times. Officer Leonard Wheeler testified that he was on patrol and saw Green striking Hoffman. The officer's patrol car video recorded part of the assault that showed Green punch Hoffman six times. The jury viewed the video during the State's case-in-chief.

Green testified in his defense. He admitted to assaulting Hoffman but denied that he attempted to take her laptop. Green's testimony was markedly different from Hoffman's. He testified that he was playing basketball at Shawnda Joyner's house across the street from Comal Park. According to Green, he went to the park to retrieve his basketball that had bounced across the street and when he got close to Hoffman, she called him a "bald-headed crackheaded-ass n——" and tried to strike him with her laptop. Green became very upset by Hoffman's racial slur and was in a rage when he hit her. Joyner corroborated Green's testimony at trial by stating that she heard Hoffman call Green a "n———." The theory presented by the defense was that Green was guilty of misdemeanor assault, not felony robbery.

Green had a significant criminal record. Green's attorney did not file a pretrial

2

motion in limine regarding his extraneous offenses or a pretrial motion for Green to testify without impeachment by prior convictions. Additionally, Green's attorney did not elicit any testimony from Green regarding his prior convictions during his direct examination.

On cross-examination the State questioned Green extensively about his full criminal history. In response to a question asking Green whether this "was [his] first rodeo," Green replied that he had been in the criminal justice system five times from 1980 through 1990. The prosecution proceeded to impeach Green by asking detailed questions about his criminal history. Green testified, without objection, to the commission of seventeen extraneous offenses—testimony that he now contends was inadmissible.[2] Specifically, the jury heard evidence that Green was convicted of misdemeanor assaults in 1983, 2004, 2010, and 2011,[3] two misdemeanor possessions of marijuana in 2009, possession of a controlled substance in 2010, misdemeanor evading arrest in 2004, retaliation in 1986, burglary of a habitation in 1986, 1987,[4] and 1989, burglary of a building in 1980, unauthorized use of a motor vehicle in 1985, and involuntary manslaughter in 1991.[5]

On re-direct, Green's counsel asked him about his mental health. Green testified that he was diagnosed with a mental health condition in 2009 and that he was taking Risperdal, a psychiatric medication, at the time of trial, but not at the time of the assault.

---

[2] Green testified to twenty prior offenses, but only contends that seventeen were inadmissible.

[3] In 2011, Green was convicted of two misdemeanor assaults.

[4] In 1987 Green was convicted of two burglaries of a habitation.

[5] Additionally, Green was previously convicted of three misdemeanor thefts, which he does not contend were inadmissible.

Green's counsel asked Green if he had "self-medicated with illegal substances," and Green replied in the affirmative. Green then testified that "despite all [his] history and everything else, [he] didn't try to steal from that woman that day."

On re-cross-examination, the State asked Green to identify the drugs he used to self-medicate. Green testified that he self-medicated with alcohol and pills. Green was then asked if he was self-medicating when he was arrested for possession of crack cocaine in 2010. Green testified that he was not; instead, he had it because he was selling it. When asked how he paid for the drugs he sold, Green testified that he used his disability check to purchase them.[6] Green's counsel objected to this line of questioning but the objection was overruled. Green's counsel did not object to subsequent testimony regarding Green's drug financing.[7] The jury found Green guilty of second degree felony robbery. TEX. PENAL CODE § 29.02 (West, Westlaw through 2013 3d C.S.).

Enhanced by ten felony convictions, Green was sentenced to ninety-nine years in prison. This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. Standard of Review & Applicable Law

Both the Federal and Texas Constitutions guarantee an accused the right to assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; TEX. CODE CRIM.

---

[6] Green testified that he received a monthly disability check in the amount of $674.00 because of a bullet lodged in his back.

[7] Days after the trial concluded the trial court acknowledged on the record that Green's counsel was not included on the "A-list," which was a list of attorneys qualified to represent clients charged with first-degree felonies. However, the judge noted that the "A-list" had been frozen and that he had informed Green of the discrepancy. It made an affirmative finding that counsel effectively represented Green during the jury trial.

4

PROC. ANN. § 1.051 (West, Westlaw through 2013 3d C.S.). This right necessarily includes the right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To establish ineffective assistance of counsel, an appellant must show by a preponderance of the evidence that (1) trial counsel's performance fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense.[8] *Id.*; *Wert v. State,* 383 S.W.3d 747, 752 (Tex. Crim. App. 2012).

To satisfy *Strickland*'s first prong, the appellant must identify acts or omissions of counsel that allegedly were not the result of reasonable judgment. *Strickland*, 466 U.S. at 690. A defendant must overcome the strong presumption that trial counsel's actions fell within the wide range of reasonable and professional assistance. *Garza v. State*, 213 S.W.3d 338, 347–48 (Tex. Crim. App. 2007); *see also Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (en banc). If the reasons for counsel's conduct at trial do not appear in the record and it is possible that the conduct could have been grounded in legitimate trial strategy, an appellate court will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal.[9] *Garza,* 213 S.W.3d at 348; *see also Menefield v. State,* 363 S.W.3d 591, 593 (Tex. Crim. App. 2012) (holding that "[a]n ineffective-assistance claim must be 'firmly founded in the record' and 'the record must affirmatively demonstrate' the meritorious nature of the claim.") (internal citations

---

[8] Texas adopted the *Strickland* test in *Hernandez v. State. See* 726 S.W.2d 53 (Tex. Crim. App. 1986) (en banc).

[9] A proper record is best developed in a habeas corpus proceeding or in a motion for new trial hearing. *Jensen v. State*, 66 S.W.3d 528, 542 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). We note that no motion for new trial was filed and that there was no habeas corpus proceeding whereby a record could be developed in this case.

5

omitted). Direct appeal is usually an inadequate vehicle for raising such a claim. *Menefield,* 363 S.W.3d at 592–93.

A sound trial strategy may be imperfectly executed, but the right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). "Isolated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of trial counsel's performance for examination." *Wert,* 383 S.W.3d at 753. Finally, "[i]t is not sufficient that the appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Id.* (internal citations omitted). Instead, to establish that the attorney's acts or omissions were outside the range of professionally competent assistance, appellant must show that counsel's errors were so serious that he was essentially not functioning as counsel. *Id.* (citing *Patrick v. State*, 906 S.W.2d 481, 495 (Tex. Crim. App. 1995) (en banc)). "To warrant reversal when trial counsel has not been afforded an opportunity to explain his reasons, the challenged conduct must be so outrageous that no competent attorney would have engaged in it." *Roberts v. State*, 220 S.W.3d 521, 533–34 (Tex. Crim. App. 2007) (internal citations omitted).

To satisfy *Strickland's* second prong, the appellant must establish a reasonable probability that, but for counsel's errors, the result would have been different. 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Thompson v. State,* 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Failure to satisfy either prong defeats an ineffective assistance claim. *Strickland,* 466 U.S. at 697.

In applying the *Strickland* test we consider the totality of the representation and the particular circumstances of the case to determine whether counsel was ineffective. *Thompson,* 9 S.W.3d at 813.

### B.    Analysis

Green contends in his first and second issues that his counsel's failure to object to questions eliciting his criminal history and drug usage show that he received ineffective assistance of counsel and that without his counsel's errors the result of the trial would have been different. *See Strickland*, 466 U.S. at 687. Specifically, Green contends that his counsel's trial performance fell below an objective standard of reasonableness. *Id*. Green must therefore overcome the strong presumption that his counsel's actions did fall within the wide range of reasonable and professional assistance. *See Wert,* 383 S.W.3d at 752–53; *Garza,* 213 S.W.3d at 348. Green has the burden of establishing that his counsel made errors so serious that he was essentially not functioning as counsel. *See Patrick*, 906 S.W.2d at 495.

A defendant who testifies places his credibility at issue and may be impeached like any other testifying witness. *Geuder v. State,* 142 S.W.3d 372, 375 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). Texas Rule of Evidence 609(a) provides that prior convictions for felonies or for crimes involving moral turpitude are admissible to impeach a witness's credibility for truthfulness if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party. Tex. R. Evid. 609(a) (West, Westlaw through 2013 3d C.S.). If the conviction and date of release are more than ten years old, then the probative value must substantially outweigh the prejudicial effect. *See id.* at 609(b).

7

Green testified to fourteen extraneous offenses that were over ten years old, misdemeanor convictions, or both. *See id.* Of the misdemeanor convictions testified to, five were for misdemeanor assault.[10] Nonetheless, Green's counsel may have made a strategic determination in not objecting to evidence of his client's criminal history. *See McKinny v. State,* 76 S.W.3d 463, 473–74 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (en banc) (regarding making objections, the court noted "advocates must be free to choose not to make them even if they have a legal basis for doing so. . . . jurors often see lawyers who make [objections] as trying to keep the real truth from them.") (internal quotations omitted). More importantly, a lawyer may strategically decide to allow the other side to introduce otherwise inadmissible evidence because it simply does not hurt the client's case or, in fact, may help it. If a lawyer is reasonably sure certain evidence will not hurt his client's case, "it is usually better not to object." Without the benefit of a hearing on a motion for new trial or a habeas proceeding, we do not have insight into Green's counsel's trial strategy. *See id.* at 473.

> Green's counsel made the following statement during closing argument:
>
> Well no matter how you may feel about Mr. Green as a person, no matter how bad his history may be, his history is only important to the extent that you think it affects his credibility. . . . You can only use that to determine and deal with his credibility versus Ms. Hoffman's credibility.

Green's counsel also stated that Green was not "hiding from [his] history," as part of his argument that Green was guilty of assault only, as opposed to assault and robbery. This suggests that Green's counsel was utilizing trial strategy in Green's defense. We cannot

---

[10] We note that evidence of prior criminal convictions for the same crime as that being tried can be highly prejudicial. *See generally Theus v. State,* 845 S.W.2d 874, 879–80 (Tex. Crim. App. 2002).

find that the decisions made by Green's counsel to not object were so outrageous that no competent attorney would have engaged in them.   *See Roberts,* 220 S.W.3d at 533–34; *McKinny,* 76 S.W.3d at 473 (noting that an attorney may choose not to make a valid objection for a number of strategic reasons).

Green also complains that his counsel failed to object to the State's questioning about his drug usage and dealing and that his counsel did not use reasonable judgment in opening the door to his mental health issues and his habit of self-medicating with illegal substances.   However, defense counsel can only present the evidence that is available. *See West,* 2014 WL 6601216, at *4.   This may sometimes lead to a choice between presenting potentially harmful evidence or no evidence at all.   *Id.*   Without a motion for new trial or habeas corpus hearing, we are unable to determine what facts Green relayed to defense counsel and what, if any, alternative legal strategies defense counsel chose to disregard.   *See id.*

It may be that framing Green's assault as a rage-fueled action of a mentally unstable individual was Green's only available strategy.   *See Garza,* 213 S.W.3d at 348 ("Counsel's reasons for his actions or intentions do not appear in the record, and his conduct could have been part of a reasonable trial strategy.   Without more, we must defer to counsel's decisions and deny relief."); *Ortiz v. State*, 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002) (en banc) ("If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal."); *McNeil v. State*, 174 S.W.3d 758, 760 (Tex. App.—Waco 2005, no pet.) ("[I]f nothing in the record reveals trial counsel's reason, it is improper for [the

9

court] to speculate on it."). Consequently, presenting evidence of Green's mental history and his use of illegal substances does not by itself, demonstrate outrageous or clearly deficient performance. *See Wert,* 383 S.W.3d at 753; *Roberts,* 220 S.W.3d at 533–34. We cannot conclude Green overcame the "strong presumption" that his counsel acted reasonably. *See Garza,* 213 S.W.3d at 348.

Even assuming that Green met *Strickland's* first prong, he cannot meet the second prong requiring that he affirmatively prove prejudice. *See* 466 U.S. at 693; *West,* 2014 WL 6601216, at *2. Green cannot show there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. *See* 466 U.S. at 693; *West,* 2014 WL 6601216, at *2. The strongest evidence presented that Green robbed Hoffman was Hoffman's direct testimony that Green said "I'm going to take all your sh—," before he grabbed her laptop and began beating her. The video showing Green beating Hoffman also captured the aftermath of the assault. The jury saw and heard Hoffman immediately after the beating—sobbing and hysterical—tell the officer that Green tried to steal her laptop.

Green testified that the beating the jury saw in the video was the result of an insult and nothing more. Green further testified that he only approached Hoffman for the purpose of retrieving his basketball. On cross-examination, however, the State showed that Green could not name the children with whom he claimed he had been playing basketball.[11] Green was also unable to explain how his initial story involving the basketball could be accurate when there was a fence around the park. After he initially

---

[11] Green testified that he did not know the children's names, but that their nicknames were Poo Poo and Lay Lay. Joyner later testified that the children's' nicknames were Tom Tom and Nana.

testified that the ball rolled close by Hoffman, he changed his testimony on cross-examination to state that the ball rolled to the fence, Hoffman insulted him across the fence, and he walked around the fence to assault her.[12]

Additionally, the jury could have found Joyner's changed story not credible. Green's story that he was called a "n——" was corroborated in part by Joyner. At trial Joyner testified that Green was playing basketball in her front yard and that she heard Hoffman call Green a "n——" before he began to beat her. Joyner admitted that her corroborating testimony was new. She neither informed the police about the racial slur immediately following the assault nor a detective in a later interview. Joyner also testified that when she met with the prosecutor in preparation for trial she did not tell him about Hoffman's alleged use of the racial slur. The evidence strongly supports Green's conviction for robbery even without considering his criminal history and drug use. Green therefore cannot establish that, but for his counsel's errors, the result of the proceeding would have been different. *See Thompson,* 9 S.W.3d at 812–13. Green failed to satisfy both prongs of the *Strickland* test. 466 U.S. at 487.

We overrule Green's first and second issues.

### III.    FUNDAMENTAL ERROR IN CHARGE

In his third issue, Green contends that the failure to include a limiting instruction in

---

[12] The following exchange took place during cross-examination:

State: So, you came over to get the ball, your testimony, the ball rolls over here, the ball rolls across the street, bumps up onto the curb, keeps a straight trajectory, so comes straight across, you come across, she calls you a bald head crackheaded ass n——, you walk down the fence line, up into the fence line, and approach her, and hit her?

Green:   Yes sir.

the charge for his extraneous offenses constitutes reversible error. He contends that because the jury was not instructed that it could not consider evidence of an extraneous offense to prove Green's character in conformity with the crime for which he was on trial, Green suffered egregious harm.

### A.      Standard of Review & Applicable Law

A claim of jury-charge error is governed by the procedures set forth in *Almanza v. State*.   686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (en banc) (op. on reh'g), *overruled on other grounds by Rodriguez v. State*, 758 S.W.2d 787 (Tex. Crim. App. 1988).   We must first determine whether the trial court erred in its submission of the charge.   *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009).   If error exists and appellant properly objected at trial, reversal is required if "some harm" resulted, i.e., if the error was "calculated to injure the rights of the defendant."   *Id.* (quoting *Almanza*, 686 S.W.2d at 171).   If appellant failed to object, error must be "fundamental," and reversal will result only if the error was so egregious and created such harm that the defendant "has not had a fair and impartial trial."   *Id.* (quoting *Almanza*, 686 S.W.2d at 171).

Green did not object to the trial court's failure to include a limiting instruction in the jury charge; thus we will consider the effect of any error under the standard of egregious harm.   *Price v. State,* —S.W.3d—, 2015 WL 1743388, at *2 (Tex. Crim. App. 2015).   To determine egregious harm, we must consider (1) the entire jury charge, (2) the state of the evidence, including the contested issues and the weight of the probative evidence, (3) the arguments of the parties, and (4) any other relevant information revealed by the record of the trial as a whole.   *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008) (citing *Almanza,* 686 S.W.2d at 171).   "Jury charge error is egregiously harmful if it affects

12

the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Id.*

**B.     Discussion**

We determine initially whether failure to instruct the jury regarding the limited use for which the extraneous criminal convictions could be used was error.   *See Barrios,* 283 S.W.3d at 350.   "The trial judge does not have a duty to instruct the jury on all potential defensive issues, lesser-included offenses, or evidentiary issues."   *Grubbs v. State,* 440 S.W.3d 130, 137 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (citing *Delgado,* 235 S.W.3d at 249).   The Texas Court of Criminal Appeals has noted "that the decision of whether to request a limiting instruction concerning the proper use of certain evidence, including extraneous offenses, may be a matter of trial strategy."   *Delgado,* 235 S.W.3d at 250.

"A limiting instruction concerning the use of extraneous offense evidence should be requested, and given, in the guilt-stage jury charge only if the defendant requested a limiting instruction under Rule of Evidence 105 when the evidence was first admitted." *Id.* at 251; *see also Hammock v. State*, 46 S.W.3d 889, 894 (Tex. Crim. App. 2001); *McGowan v. State*, 375 S.W.3d 585, 593 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd).   Once evidence has been admitted without a limiting instruction, it is part of the general evidence and may be considered for all purposes.   *Delgado,* 235 S.W.3d at 251; *McGowan*, 375 S.W.3d at 593.   Here, Green did not request a limiting instruction when the evidence was admitted during the trial and the evidence was therefore before the jury for all purposes.   *See Delgado,* 235 S.W.3d at 251; *McGowan*, 375 S.W.3d at 593. Thus, because the evidence was before the jury for all purposes and the trial court had

13

no duty to instruct the jury on this evidentiary issue, the trial court did not err by failing to include a limiting instruction in the jury charge. *See Delgado*, 235 S.W.3d at 251; *Grubbs,* 440 S.W.3d at 130; *see also McGowan*, 375 S.W.3d at 593.

We overrule Green's third issue.

## IV.    CONCLUSION

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
28th day of May, 2015.

14