**Affirmed and Memorandum Opinion filed April 23, 2019.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-17-00749-CR

---

**JAMES OLIVER CHARLES, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 17-CR-0273**

---

## M E M O R A N D U M   O P I N I O N

Appellant James Oliver Charles, Jr. appeals his conviction for robbery. After a jury found appellant guilty, the trial court assessed his punishment at eight years' imprisonment. Appellant's appellate counsel contends that appellant's trial counsel provided ineffective assistance of counsel by failing to object to evidence of extraneous offenses allegedly perpetrated by appellant against the complainant. Appellant has additionally filed a pro se appellate brief in which he also primarily

complains of alleged ineffective assistance of counsel. Because appellant does not present any meritorious grounds for reversal, we affirm.

## *Background*

Appellant and complainant Georgia Logan previously had a dating relationship with one another and have a child together. On November 4, 2016, Logan called 911 and reported an altercation that she had with appellant. After an investigation, appellant was charged with robbery for knocking Logan down and forcibly taking her cell phone from her.

Before trial, defense counsel filed a motion in limine requesting, among other things, that before any pending charges or alleged extraneous offenses by appellant were mentioned, a ruling on their admissibility would first be obtained from the judge. During a pretrial conference, the judge and counsel discussed the parameters of what extraneous offenses might be admissible during trial. The judge adamantly stated that no pending charges should be discussed, but the judge indicated that evidence of certain offenses involving appellant and complainant might be admissible as relevant contextual or background evidence. The judge encouraged defense counsel to raise objections whenever he thought such evidence would be inadmissible. During trial, defense counsel objected to some evidence of extraneous offenses, particularly if they involved pending charges, but did not object to other evidence of extraneous offenses.

At trial, Logan testified that she and appellant began a romantic relationship in June 2014 and had a daughter together in 2015. She said that things eventually "started going downhill," and they began having fights and arguments, sometimes physical fights in which "he would put his hands on [her] and . . . take [her] things . . . and throw them away." She described a pattern of harassment in which appellant allegedly knocked on her apartment door "at all times of night," damaged

2

her car, and followed her. She also claimed that he had gone into her apartment when she was not there, had thrown bricks through her windows, and had threatened her friends.

Logan further explained that from time to time, appellant would demand to see his daughter. She said that there was no formal visitation arrangement regarding the girl, but appellant's family did get to see the child occasionally. On the day of the alleged robbery, Logan said that appellant came to her work and yelled at her as she was leaving that he wanted to see his daughter. He then followed her as she drove to a police station to report him, but after waiting fifteen minutes at the station, she left without making a report.

Logan then took her son to school, where appellant drove up and again yelled that he wanted to see his daughter. Later, appellant knocked on the wall of Logan's apartment but then ran away when she threatened to call police. Appellant subsequently came back, "beat on the door," and said, "I got you." Logan explained that she thought this meant appellant had put sugar in her gas tank, as he had done this before, so she went outside to check her car. Appellant drove by and Logan called 911. Appellant then came back, got out of his vehicle, knocked Logan down, stepped or "stomped" on her, and snatched her phone. She said that they struggled briefly over the phone, but she let it go because she wanted him to stop stepping on her. Appellant then left in his vehicle with Logan's phone, and Logan called 911 again using her neighbor's phone.

Logan said that she called the police at least 28 times to report appellant in November 2016. She denied, however, that she had been asking appellant for money or using one of his vehicles during that time. Logan further alleged that appellant returned later on the day of the robbery, and that on the next day, she discovered that her car windows had been broken out, the tires were flat, and there

3

was sugar in the gas tank. Defense counsel objected to testimony regarding "some sort of extraneous offense about criminal mischief to a vehicle." The trial judge denied the objection but told the prosecutor that anything relating to a later, similar incident would not be admissible.

On cross-examination, Logan acknowledged that she had previously been convicted of robbery herself, there was a pending family court case regarding the couple's daughter at the time of the altercation, and she had kept appellant's family from seeing the child at times. Logan further admitted that she told appellant while he was in jail that she loved him and that he was a good man, but she said that this was a lie to try to get him to pay for the damage to her car. Logan also acknowledged telling a police officer that she had dropped previous assault charges against appellant because appellant's mother asked her to; Logan said that in reality, she just inferred that appellant's mother wanted her to drop the charges. Defense counsel further questioned Logan regarding several additional inconsistencies between her testimony and her statements to police.

Logan's neighbor, Melody Howard, generally testified in support of Logan's account of events, although she did not observe the actual altercation. Howard stated that immediately after the altercation, Logan ran up to her saying that appellant had broken her phone and she, therefore, needed to use Howard's phone to call the police. The investigating police officer also testified. During cross-examination, he acknowledged that the officer who had originally responded to the scene had put in her report that the account provided by Logan was not consistent with the reported severity of the attack.

Appellant's mother testified that she never asked Logan not to press charges against appellant for previous alleged assaults, that Logan had been keeping them from seeing the child, and that Logan had been driving appellant's vehicle within a

couple of weeks of the altercation. Appellant's stepfather testified that he had known appellant for 20 years and had never known him to steal.

During closing argument, defense counsel urged the jury that the evidence presented might substantiate the lesser-included assault charge but did not support a finding that appellant committed robbery. Counsel additionally argued that based on where contemporaneous photographs showed dirt on Logan's person after the altercation, her phone was likely broken during the encounter. He emphasized various discrepancies and inconsistencies in Logan's testimony and that Logan had told Howard that appellant had broken her phone. Counsel again noted that Logan had reportedly been using appellant's vehicle within a couple of weeks of the altercation, lied about not previously reporting assaults because appellant's mother asked her not to, and lied to appellant at the jail in order to try to get him to fix her car.

In the jury charge, the trial court queried the jury alternatively regarding robbery and the lesser included offense of assault. The charge also included an instruction informing jurors that they could not consider evidence of an extraneous offense for any purpose unless they believed beyond a reasonable doubt that appellant committed the offense. The jury found appellant guilty of robbery, and the trial court subsequently sentenced appellant to eight years in prison. Appellant did not file a motion for new trial.

### Standards of Review

The Sixth Amendment to the United States Constitution guarantees the right to reasonably effective assistance of counsel in criminal prosecutions. U.S. Const. amend. VI; *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). Claims of ineffective assistance of counsel are evaluated under the two-pronged *Strickland* test that requires a showing that counsel's performance was deficient and that the

5

defendant suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *see also Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Essentially, appellant must show his counsel's representation fell below an objective standard of reasonableness based on prevailing professional norms and there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 693; *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011).

Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 813. In the majority of cases, the record on direct appeal is simply undeveloped and cannot adequately reflect the alleged failings of trial counsel. *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998). A proper record is best developed in a habeas corpus proceeding or in a motion for new trial hearing. *DeLeon v. State*, 322 S.W.3d 375, 381 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

Judicial scrutiny of counsel's performance must be highly deferential, and we are to indulge a strong presumption that counsel was effective. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). We presume counsel's actions and decisions were reasonably professional and that they were motivated by sound trial strategy. *Id*. Moreover, it is appellant's burden to rebut this presumption by a preponderance of the evidence, via evidence illustrating why trial counsel did what he did. *Id*.

A sound trial strategy may be imperfectly executed, but the right to effective assistance of counsel does not entitle a defendant to errorless or perfect representation. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). It is not sufficient for the appellant to show, with the benefit of hindsight, that his

counsel's actions or omissions during trial were merely of questionable competence. *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007). Rather, to establish that the attorney's acts or omissions were outside the range of professionally competent assistance, appellant "must show that counsel's errors were so serious that he was not functioning as counsel." *Patrick v. State*, 906 S.W.2d 481, 495 (Tex. Crim. App. 1995). We may not assume a lack of sound trial strategy on the part of trial counsel merely because we are unable to discern any particular strategic or tactical purpose in counsel's trial presentation. *See Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002) ("A vague, inarticulate sense that counsel could have provided a better defense is not a legal basis for finding counsel constitutionally incompetent. . . . [A] defendant must prove, by a preponderance of the evidence, that there is, in fact, no plausible professional reason for a specific act or omission.").

If appellant proves his counsel's representation fell below an objective standard of reasonableness, he still must affirmatively prove prejudice as a result of those acts or omissions. *Strickland*, 466 U.S. at 693. If appellant fails to make the required showing of either deficient performance or prejudice, his claim fails. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003).

### *Failure to Object to Extraneous Offenses*

Appellant contends that he received ineffective assistance of counsel because his counsel failed to object to evidence of extraneous offenses that appellant allegedly committed against Logan. Evidence of extraneous offenses is not admissible at the guilt phase of a trial to prove that a defendant committed the charged offense in conformity with a bad character, but it may be admissible if it has relevance apart from character conformity, such as when it provides proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of

7

mistake or accident or when evidence of multiple crimes are connected such that full proof of any one of them cannot be given without evidence of the others. *See* Tex. R. Evid. 404(b); *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011).

A failure to object to extraneous offense evidence does not necessarily indicate that counsel was ineffective. The evidence may have been admissible for a purpose other than character conformity, or there may have been strategic reasons for not objecting to such evidence. *See, e.g., Tong v. State*, 25 S.W.3d 707, 714 (Tex. Crim. App. 2000) (holding on silent record appellant failed to overcome presumption that counsel's failure to object to extraneous offense victim impact evidence was part of a strategic plan); *Straight v. State*, 515 S.W.3d 553, 573-74 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (explaining that not requesting a limiting instruction on the admission of extraneous offense evidence may have been a strategic decision not to highlight the evidence); *Sifuentes v. State*, 494 S.W.3d 806, 813 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("Trial counsel's failure to object to admissible evidence does not constitute ineffective assistance of counsel."); *West v. State*, 474 S.W.3d 785, 791 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (explaining that counsel used defendant's history of obtaining vehicles in exchange for drugs as an alternative explanation for why he was in possession of a stolen vehicle); *McKinny v. State*, 76 S.W.3d 463, 473 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (assuming failure to object to inadmissible evidence was strategic decision in face of silent record).

Appellant did not file a motion for new trial in this case, and this is not a habeas corpus proceeding; accordingly, the record before us does not contain any express explanation for counsel's conduct. In the face of a silent record regarding counsel's rationale, we will not find ineffective assistance unless counsel's conduct

was so outrageous that no competent attorney would have engaged in it. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Lopez v. State*, 470 S.W.3d 146, 151 (Tex. App.—Houston [14th Dist.] 2015, no pet.). As set forth above, there are reasons why counsel might choose not to object to extraneous offense evidence. On this record, appellant has failed to rebut the strong presumption that trial counsel's actions were reasonably professional and motivated by sound trial strategy. *See Jackson*, 877 S.W.2d at 771.[1] Accordingly, we overrule the sole issue in appellate counsel's brief.

### *Pro se Arguments*

We have discretion also to consider the arguments appellant made in his pro se brief, notwithstanding the general rule that an appellant is not entitled to hybrid representation. *See Justice v. State*, 532 S.W.3d 862, 866 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (citing *Ex parte Dupuy*, 498 S.W.3d 220, 228–29 (Tex. App.—Houston [14th Dist.] 2016, no pet.)).

In his pro se brief, appellant specifically asserts that his trial counsel was ineffective because he failed to (1) introduce the responding officer's incident report into evidence, which appellant states would have shown that the altercation was originally reported as a "disturbance" and not a robbery, (2) subpoena the responding officer to testify, or (3) prepare appellant for trial. As noted above, however, allegations of ineffectiveness must be firmly founded in the record. *See, e.g., Thompson*, 9 S.W.3d at 813.

Appellant does not cite any support in the record for his allegations. The trial court did not hold a motion for new trial hearing in this case because no such

---

[1] We note that counsel did work to keep out evidence of other pending criminal charges against appellant, perhaps because allegations that resulted in charges being filed could be seen by the jury as more credible.

9

motion was filed. The record does not appear to contain the original incident report, and appellant does not offer any analysis regarding whether it would have been admissible. The record further does not include any explanation from trial counsel regarding his action or inaction concerning the offense report or the responding officer who wrote the report. It is worth noting, however, that counsel did get the investigating officer who testified to acknowledge that the responding officer indicated in her report that Logan's account of events was not consistent with the reported severity of the attack. Counsel may have determined that eliciting this testimony was sufficient, perhaps in light of other things in the report or other testimony the responding officer might have provided had she been called as a witness.

In the face of a silent record regarding counsel's rationale, we will not find ineffective assistance unless counsel's conduct was so outrageous that no competent attorney would have engaged in it. *Goodspeed*, 187 S.W.3d at 392; *Lopez*, 470 S.W.3d at 151. There is no indication here that counsel's conduct regarding the incident report or the responding officer fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 693. Moreover, there is no evidence regarding to what degree counsel prepared appellant for trial. In the face of a silent record, we find no merit in any of appellant's pro se arguments alleging ineffective assistance of counsel. *See Goodspeed*, 187 S.W.3d at 392; *Lopez*, 470 S.W.3d at 151.

Additionally, in his pro se brief, appellant charges that a juror was improperly seated in violation of appellant's constitutional right to a fair trial. Appellant specifically asserts that prospective juror no. 9 acknowledged during voir dire that she knew one of the prosecutors and that prosecutor's family. The record reflects that two prospective jurors stated that they knew the prosecutor in

10

question.[2] One of the prospective jurors in question was identified as juror no. 10. Juror no. 10 was subsequently struck by defense counsel and did not serve on the jury. The other prospective juror who knew one of the prosecutors is not identified in the record by name or number. It therefore cannot be discerned whether that prospective juror ultimately served on the jury.

Even if appellant is correct that the juror in question was juror no. 9, who did serve on the jury, appellant did not object to her service. Accordingly, he did not preserve this issue for review. *See* Tex. R. App. P. 33.1(a) (requiring a complaint on appeal to have been preserved by a timely and sufficiently specific request, objection, or motion in the trial court); *Broxton v. State*, 909 S.W.2d 912, 917–18 (Tex. Crim. App. 1995) (explaining that even constitutional errors may be waived by failure to object at trial). Moreover, appellant does not identify any authority supporting his contention. *See* Tex. R. App. P. 38.1(i) (requiring an appellant's brief to contain appropriate citations to authority and the record). Finding no merit in any of the contentions appellant makes in his pro se brief, we overrule his pro se issues.

We affirm the trial court's judgment.


/s/    Frances Bourliot
Justice


Panel consists of Justices Christopher, Bourliot, and Spain.

Do not publish— TEX. R. APP. P. 47.2(b).

---

[2] Both prospective jurors affirmed that they could be fair and impartial despite their knowledge of or relationship with the prosecutor.