**Opinion filed June 29, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-21-00238-CR
_____

## BRANDY SMYTHE A/K/A BRANDI LYNN SMYTHE, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 104th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 21096-B**

### M E M O R A N D U M   O P I N I O N

The jury found Appellant, Brandy Smythe (also known as Brandi Lynn Smythe) guilty of possession of methamphetamine with intent to deliver, in an amount by aggregate weight of four grams or more but less than two hundred grams, a first-degree felony. TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d) (West 2017). The trial court assessed Appellant's punishment at confinement for a term of five years in the Institutional Division of the Texas Department of Criminal Justice.

Appellant challenges her conviction in two issues. In her first issue, Appellant challenges the sufficiency of the evidence supporting her conviction. In her second issue, Appellant alleges ineffective assistance of counsel during the guilt-innocence phase of trial. We affirm.

*Background Facts*

On June 14, 2017, at around 6:15 p.m., Agent Gary Castillo with the Abilene Police Department (APD) Narcotics Unit and other APD officers executed a search warrant at a house in Abilene. The warrant named Grady Cozby, Appellant's boyfriend at the time. Appellant was present in the kitchen when the warrant was executed. Officers gathered Appellant, Cozby, and several other individuals who were present in the house into the living room. Agent Castillo advised the individuals of their *Miranda*[1] rights and gave them an opportunity to surrender any illegal items before officers searched the house. Agent Castillo then asked each individual where they lived.[2] Appellant was detained, in part, because she told Agent Castillo she lived at the house.

Throughout the house, officers found illegal substances, drug paraphernalia, and evidence that methamphetamine was being sold. Roy Dunlap, an individual present in the house, had marihuana and methamphetamine on his person. In the basement of the house, officers discovered approximately twenty-five grams of liquid methamphetamine; syringes; small, clear Ziploc bags that Agent Castillo testified were often used to package methamphetamine; spoons and a "teacup" with white residue on them; a scale; a "glasses case" containing used syringes and marihuana; a small bottle that was used as a "bong" and filled with blue liquid; a "pipe"; marihuana and a marihuana pipe; and marihuana grinders.

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

[2]Agent Castillo testified that individuals who are not residents of the house and are not named in the search warrant are generally able to leave.

In the master closet area, officers found a green "makeup bag" on a chair which contained five syringes and a Ziploc bag with white residue. Officers found a glass "methamphetamine bong" on a shelf in the master closet. Officers also found syringes and a straw; a mirror with white residue on it; marihuana; Ziploc bags; and a piece of mail bearing Appellant's name and the house's address in a vanity located in the master closet area.

Officers also found a notepad containing a pricing ledger detailing the "current rates" for phrases such as "less than or equal to one gram," "teen," "ball," and "quarter" located in the master bedroom. Agent Castillo described these words and phrases as the "street term[s]" for different weights of drugs. Agent Castillo testified that the prices described for different weights contained in the ledger were consistent with his knowledge of what methamphetamine typically sold for in the summer of 2017.

At trial, Appellant testified that she had not been living with Cozby at the time of her arrest and that she would only stay with him "on occasion." Appellant asserted that she had "no idea" there was methamphetamine in Cozby's house and that she never saw a methamphetamine sale take place in the house. During cross-examination, Appellant confirmed that she had a history of using drugs, that she was currently on deferred adjudication community supervision for a 2017 arrest for possession of a controlled substance, that she had three previous felony convictions for drug offenses, and that she had a previous conviction for theft by check.

*Analysis*

*Sufficiency of the Evidence*

In her first issue, Appellant contends that there was insufficient evidence to prove she knowingly possessed methamphetamine. Appellant asserts that, consequently, there was insufficient evidence to support her conviction, because

possession of methamphetamine is a lesser-included offense of possession of methamphetamine with intent to deliver.

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight witness testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

It is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). Each fact need not point directly and independently to guilt if the cumulative force of all incriminating

4

circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Because evidence must be considered cumulatively, appellate courts are not permitted to use a "divide and conquer" strategy for evaluating the sufficiency of the evidence. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). Instead, appellate courts must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017).

A person is guilty of possession of a controlled substance if he or she intentionally or knowingly possessed the controlled substance. *See* HEALTH & SAFETY § 481.115(a) (West Supp. 2022). The Health and Safety Code defines possession as "actual care, custody, control, or management." *Id.* at § 481.002(38). To prove unlawful possession of a controlled substance, the State must show that: (1) the accused exercised control, management, or care over the substance, and (2) the accused knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005), *overruled in part on other grounds by Robinson v. State*, 466 S.W.3d 166, 173 & n.32 (Tex. Crim. App. 2015); *Hughitt v. State*, 539 S.W.3d 531, 538 (Tex. App.—Eastland 2018), *aff'd*, 583 S.W.3d 623 (Tex. Crim. App. 2019). The evidence must establish that the accused's connection with the drugs is more than just his or her fortuitous proximity to someone else's drugs. *Poindexter*, 153 S.W.3d at 405–06; *Hughitt*, 539 S.W.3d at 538.

Texas courts have formulated the "affirmative links rule," which provides that, "[w]hen the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Poindexter*, 153 S.W.3d at 406 (alteration in original) (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)); *see Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006) (listing affirmative links recognized by courts); *see also*

5

*Tate v. State*, 500 S.W.3d 410, 413–14 (Tex. Crim. App. 2016) (citing *Evans*, 202 S.W.3d at 162 n.12). The affirmative links rule is routinely employed to establish possession when the accused is not in exclusive possession of the place where the drugs are found. *Poindexter*, 153 S.W.3d at 406.

The following links have been applied to infer knowledge relating to the contraband: (1) the accused's presence when the search was executed; (2) whether the contraband was in plain view; (3) the accused's proximity to and the accessibility of the contraband; (4) whether the accused was under the influence of a controlled substance when he was arrested; (5) whether the accused possessed other contraband or narcotics when arrested; (6) whether the accused made incriminating statements; (7) whether the accused attempted to flee; (8) whether the accused made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia was present; (11) whether the accused owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the accused was found with a large amount of cash; and (14) whether the conduct of the accused indicated a consciousness of guilt. *Tate*, 500 S.W.3d at 414 (citing *Evans*, 202 S.W.3d at 162 n.12). It is not the number of links that is dispositive; rather, it is the logical force of all of the evidence, both direct and circumstantial, that is the determining factor. *Evans*, 202 S.W.3d at 162.

Appellant asserts that she was merely an "innocent bystander" who had no control over, or knowledge of the methamphetamine present in the house. However, Appellant was dating the owner of the house, and she told Agent Castillo that she lived in the house. Appellant discounts this statement to Agent Castillo about living in the house as "uncorroborated." Officers also found a piece of mail addressed to Appellant at the house. Appellant discounts this evidence as being only "junk mail." The jury was the sole judge of the witnesses' credibility and the weight to be afforded

to their testimony. *See Brooks*, 323 S.W.3d at 899. To the extent that there were any conflicts in the evidence, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *See Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

Appellant was in the house when officers executed the search warrant. There was methamphetamine in plain view in the basement. Syringes and other drug paraphernalia were in plain view throughout the house. A ledger indicative of methamphetamine sales was in plain view in the master bedroom. Marihuana and marihuana paraphernalia were scattered throughout the house. Appellant admitted that she knew marihuana was present in the house. Appellant also admitted that she had a history with drugs and that she had a pending deferred adjudication for possession of a controlled substance. Accordingly, there were "additional independent facts and circumstances which affirmatively link[ed]" Appellant to the methamphetamine. *See Poindexter*, 153 S.W.3d at 406 (alteration in original) (quoting *Deshong*, 625 S.W.2d at 329). The evidence presented at trial was sufficient to allow a rational jury to conclude that Appellant was in possession of the methamphetamine found in the house. *See id.*; *see also Jackson*, 443 U.S. at 319; *Isassi*, 330 S.W.3d at 638.

Because there was sufficient evidence to find that Appellant knowingly possessed methamphetamine, we now turn to whether there was sufficient evidence to find that Appellant possessed the methamphetamine with the intent to deliver it to another. *See* HEALTH & SAFETY § 481.112(a); *Nhem v. State*, 129 S.W.3d 696, 699 (Tex. App.— Houston [1st Dist.] 2004, no pet.) ("In a possession with intent to deliver case, the State must prove that the defendant: (1) exercised care, custody, control, or management over the controlled substance; (2) intended to deliver the controlled substance to another; and (3) knew that the substance in his possession was a controlled substance.")

7

"'Deliver' means to transfer, actually or constructively, to another a controlled substance . . . ." HEALTH & SAFETY § 481.002(8). An intent to deliver may be proved by circumstantial evidence, including evidence that the defendant possessed the contraband. *Moreno v. State*, 195 S.W.3d 321, 325 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). "Intent can be inferred from the acts, words, and conduct of the accused." *Id.* at 326 (quoting *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995)). The expert testimony of an experienced law enforcement officer may be used to establish an accused's intent to deliver. *Id.* The factors to be considered in determining whether a defendant possessed contraband with an intent to deliver include the nature of the location where the defendant was arrested, the quantity of drugs the defendant possessed, the manner of packaging the drugs, the presence or absence of drug paraphernalia, whether the defendant possessed a large amount of cash, and the defendant's status as a drug user. *Kibble v. State*, 340 S.W.3d 14, 18–19 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd); *Moreno*, 195 S.W.3d at 325; *see Guttery v. State*, No. 11-12-00160-CR, 2014 WL 3398144, at *3 (Tex. App.—Eastland July 10, 2014, pet. ref'd) (mem. op., not designated for publication). These factors are not exclusive, nor must they all be present to establish a defendant's intent to deliver. *Kibble*, 340 S.W.3d at 19.

Appellant was arrested in a house that was the subject of a search warrant executed by the APD Narcotics Unit. At the time of her arrest, Appellant told officers that she lived at the house. Numerous other individuals who did not live at the house were present when the search warrant was executed—one of which had methamphetamine on his person. Approximately twenty-five grams of methamphetamine was recovered from the house. Dirty syringes, which Agent Castillo testified could be used to provide users with a "loaded point"—a premeasured amount of methamphetamine—were found in numerous locations throughout the house. Ziploc bags, which Agent Castillo testified are typically used

8

to package methamphetamine for distribution, were also found in numerous locations throughout the house. A ledger classifying the price of different weights of drugs was found in the master bedroom of the house. Drug paraphernalia was scattered throughout the house. Additionally, Appellant testified that she had a history of controlled substance abuse. As such, we conclude that there was sufficient evidence to allow a rational jury to determine that Appellant had the intent to deliver the methamphetamine that she possessed. *See Jackson*, 443 U.S. at 319; *Isassi*, 330 S.W.3d at 638. We overrule Appellant's first issue.

### *Claim of Ineffective Assistance of Counsel*

In her second issue, Appellant asserts that her trial counsel was ineffective for failing to object to the State impeaching her during the guilt/innocence phase of trial with her prior criminal history. *See* TEX. R. EVID. 609(a). Appellant contends that allowing the jury to hear inadmissible evidence about her criminal history substantially injured her reputation because her criminal history "emphasized her propensity to use drugs which, given the offense she was charged with, greatly influenced the jury's verdict."

At trial, Appellant confirmed on cross-examination that she had a 2006 conviction for possession of a controlled substance, two 2009 convictions for possession of a controlled substance, a 2009 conviction for theft by check, and that she was currently on deferred adjudication community supervision for a 2017 arrest for possession of a controlled substance. The State's cross-examination of Appellant concluded with the prosecutor asking her "[s]o you have a pretty good history with controlled substances?" to which she replied in the affirmative.

To establish that trial counsel rendered ineffective assistance at trial, Appellant must show that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that the result would have been different but for counsel's errors. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex.

9

Crim. App. 1999) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Strickland*, 466 U.S. at 694. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and the defendant must overcome the presumption that the challenged action could be considered sound trial strategy. *Id.* at 689.

A claim of ineffective assistance of counsel "must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 814 (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)). Direct appeal is usually an inadequate vehicle to raise such a claim because the record is generally undeveloped. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Direct appeal is especially inadequate when counsel's strategy does not appear in the record. *Id.* Trial counsel should ordinarily have an opportunity to explain his actions before an appellate court denounces counsel's actions as ineffective. *Id.* Without this opportunity, an appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim App. 2001)).

Appellant contends that her trial counsel should have objected to the introduction of her criminal history under Rule 609 of the Texas Rules of Evidence. *See* TEX. R. EVID 609. Appellant contends that her prior convictions and current deferred adjudication were inadmissible under Rule 609 because: (1) the convictions discussed occurred more than ten years prior to trial and her deferred adjudication was not a final conviction; and (2) the probative value of the convictions and deferred adjudication did not outweigh their prejudicial effect to Appellant.

"In order to succeed with an ineffective-assistance-of-counsel claim based on counsel's failure to object, one 'must show that the trial judge would have committed

10

error in overruling such objection.'" *Ex parte Parra*, 420 S.W.3d 821, 824–25 (Tex. Crim. App. 2013) (quoting *Ex Parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011)).  Ordinarily this would require an examination of whether the trial court would have erred had the trial court overruled the objection that the appellant asserts trial counsel should have raised.  *Ex parte Parra*, 420 S.W.3d at 824–25.  But here, Appellant did not file a motion for new trial alleging that trial counsel was ineffective or otherwise develop a record in the trial court to substantiate her claims.  *See Freeman v. State*, 125 S.W.3d 505, 506–507 (Tex. Crim. App. 2003) (citing *Thompson*, 9 S.W.3d at 815).  Thus, trial counsel has not had an opportunity to explain or defend his trial strategy in response to the matters that Appellant contends were deficient.  *See Thompson*, 9 S.W.3d at 814 (the first prong of *Strickland* test was not satisfied where "the record provide[d] no reference to explain why counsel chose not to object[] or failed to object."); *West v. State*, 474 S.W.3d 785, 790 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *Goodspeed*, 187 S.W.3d at 392) ("Ordinarily, trial counsel should be afforded an opportunity to explain his or her actions, and in the absence of such opportunity, an appellate court should not find deficient performance unless the challenged conduct was so outrageous that no competent attorney would have engaged in it."); *see also McCook v. State*, 402 S.W.3d 47, 52 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (without a sufficient record, it is unclear whether, as trial strategy, "counsel may have allowed the testimony in an effort to make [Appellant] appear more honest and truthful, to avoid drawing unwanted attention to the impeachment, or to prevent the impression that he was . . . stonewalling evidence.").

A claim of ineffective assistance of counsel "must be firmly founded in the record."  *Thompson*, 9 S.W.3d at 814.  "Under *Thompson*, a claim of ineffective representation must be supported by a record containing direct evidence as to *why* counsel took the action(s) or made the omission(s) relied upon as the basis for

constitutionally deficient performance." George E. Dix & John M. Schmolesky, 42 *Texas Practice: Criminal Practice and Procedure* § 29:76 (3d ed. 2022) (Effective representation—Need to establish actual basis for challenged decisions of counsel). Here, trial counsel has not been afforded an opportunity to explain why he did not make an objection under Rule 609. The State contends that trial counsel might have had a reasonable trial strategy for not objecting to Appellant's remote convictions and the deferred adjudication. In response, Appellant asserts that there is no reasonable trial strategy in her trial counsel's failure to object to questions about her criminal history because her convictions and deferred adjudication were clearly inadmissible impeachment evidence.

In the absence of a contemporaneous objection, the record does not contain a statement by the prosecutor of other possible reasons for offering Appellant's prior drug convictions other than impeachment under Rule 609. In post-submission briefing, the State suggests that the prosecutor might have sought to offer the evidence to rebut a defensive theory "that [Appellant] had no knowledge of drug sales in the home despite drugs, paraphernalia and syringes in open and full view." In this regard, Appellant testified on direct examination as follows:

> Q. Did you know that there was any methamphetamine anywhere in the house?
>
> A. I had no idea.

As noted previously, evidence relating to methamphetamine use and distribution was located throughout the house; Appellant's criminal history concerning methamphetamine possession was relevant and probative to show her knowledge of the methamphetamine inside the house and to rebut her statement made on direct examination that she "had no idea" methamphetamine was there and that she "had no idea" about others selling drugs. *See Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001) (evidence may be admissible "when it is relevant

to a noncharacter conformity fact of consequence in the case, such as rebutting a defensive theory."); *see also* TEX. R. EVID. 404(b)(2) (evidence of other crimes or acts may be admissible to prove knowledge, absence of mistake, or lack of accident).

The appellate record must affirmatively demonstrate the deficient performance that constituted ineffective assistance of counsel. *Thompson*, 9 S.W.3d at 813. "In the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel." *Id.* at 813-14. Here, without an explanation from trial counsel regarding his motivations and strategies at trial, the record does not overcome the strong presumption that his conduct fell within the wide range of reasonable professional assistance. *See id.* at 813. Simply put, on the undeveloped record before us, trial counsel's conduct was not "so outrageous that no competent attorney would have engaged in it." *See Goodspeed*, 187 S.W.3d at 392. We overrule Appellant's second issue.

### *This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


June 29, 2023

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.