**Reversed and Rendered and Opinion Filed February 7, 2024**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-22-00713-CV

**ROBERT CARROLL BEVERS, Appellant**
**V.**
**PEYTON LYNN MABRY, Appellee**

**On Appeal from the 417th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 417-52953-2022**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Reichek, and Miskel
Opinion by Justice Miskel

Robert Carroll Bevers appeals the trial court's lifetime, confidential protective order in favor of Peyton Lynn Mabry under Chapter 7B of the Texas Code of Criminal Procedure. The application for a protective order was filed by the Collin County District Attorney's Office (the State) on behalf of Mabry, and the State represented her at the protective-order hearings.

Bevers raises four issues on appeal: (1)(a) the stalking statute is unconstitutional, (b) the evidence is legally insufficient to support the trial court's protective order, and (c) the evidence is factually insufficient to support the trial

court's protective order; (2) he was denied due process because the district judge was not neutral and unbiased; (3) the trial court erred when it admitted into evidence Mabry's internet research; and (4) the trial court erred when it overruled his objection to the investigating officer's testimony.

We decline to reevaluate whether the stalking statute is unconstitutional. Also, we conclude the evidence is legally insufficient to support the trial court's lifetime protective order. We reverse the trial court's protective order and render an order denying the State's application for a protective order on behalf of Mabry.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mabry is an entrepreneur who works in the areas of social media, business consulting, business building, and mentorship. She also has a partnership with an automotive dealership and appears in its marketing photos. On Instagram, she has 400,000 followers.

On Mabry's birthday in June 2021, while she was visiting her parents' house, Mabry's father brought her two boxes containing two dozen roses each and two birthday cards. The boxes had no name on them, the delivery sticker had been partially removed, and the cards were signed "Love Romeo" or "Your Romeo." Mabry did not know who "Romeo" was. When she emptied the boxes, she found an invoice with the name "Robert Bevers" or "Bevers" and an address of Frisco, Texas. Mabry did not know anyone by the name Robert Bevers.

Mabry conducted an internet search for the name that she found on the invoice and found a mug shot and previous criminal record associated with that name. This made Mabry concerned for her parents' safety and caused Mabry to feel annoyed and alarmed. Mabry was afraid this behavior would continue unless she obtained a court order.

Two days later, a gift bag and cards were left on the front porch of Mabry's parents' house. The gift bag contained perfume sets. The names of two of the perfume sets included words like "sweet" and "beautiful." Again, the cards were signed "Romeo." The man leaving the package was caught on the Mabrys' security camera. Mabry contacted law enforcement and made a report.

The next event occurred on February 14, 2022, when a man left flowers on a bench located in the Mabrys' front yard. No card was left with the flowers.

The last package was delivered on April 22, 2022, at approximately 9 p.m. Mabry's father called 9-1-1 and pursued the individual in his car for approximately five minutes until the police asked him to "stand down." This was the last time the Mabrys were visited by the person leaving the packages.

Testimony about various security videos not in evidence, as well as the security videos admitted into evidence, showed:

- the individual delivering the packages had a tattoo on his right bicep;

- a person driving a white BMW similar to Mabry's father's vehicle repeatedly drove by her parents' house but Mabry admitted that the driver cannot be identified in the videos;

–3–

- the individual leaving the packages had different types of haircuts, which Mabry surmised were changed to resemble those of her father and brother;

- the individual came to the Mabrys' house at night; and

- after April 22, 2022, there were several instances of vehicles slowing down in front of the Mabrys' house as well as in the back alleyway.

On May 18, 2022, the Collin County District Attorney's Office filed an application for a confidential protective order on behalf of Mabry pursuant to Chapter 7B of the Texas Code of Criminal Procedure and Chapter 85 of the Texas Family Code. In its application, the State requested a protective order against Bevers prohibiting him from engaging in the following conduct related to Mabry and her family:[1]

(a) committing family violence as defined in § 71.004 of the Texas Family Code or an act in furtherance of an offense under § 42.072 of the Texas Penal Code against Mabry and other protected individuals;

(b) communicating directly with Mabry and other protected individuals in a threatening or harassing manner;

(c) harassing or communicating a threat through any person to Mabry or the other protected individuals;

(d) going within 500 yards of the residence, whether specifically identified or not, of Mabry or other individuals located at a confidential address in Collin County, and a confidential address in Dallas County;

(e) going within 500 yards of Mabry or other protected individuals;

---

[1] We note that some of the prohibitions requested by the State ordinarily apply to a family violence protective order brought pursuant to Title 4 of the Family Code.

–4–

(f)     going within 500 yards of the place of employment or business, whether specifically identified or not, of Mabry or the other protected individuals currently located at confidential addresses in Collin County and Dallas County;

(g)     possessing a firearm;

(h)     using, or attempting to use, or threatening to use physical force against an intimate partner or child that would be reasonably expected to cause bodily injury;

(i)     harassing, stalking, or threatening a protected individual or engaging in conduct that would place a protected individual in reasonable fear of bodily injury to themselves or a child protected under this order;

(j)     harming, threatening, or interfering with the care, custody, or control of a pet, companion animal, or assistance animal, as defined by § 121.002 of the Texas Human Resources Code that is possessed by a member of the family or household of Mabry or any other protected individual; and

(k)     communicating in any manner with Mabry, any person protected under the order, or a member of Mabry's family or household except through that party's attorney or a person appointed by the trial court.

Also, the State attached a three-paragraph affidavit from Mabry, alleging that Bevers was stalking her, paraphrased as follows:

- Bevers left flowers, birthday cards and notes, and presents at her parents' property on June 1, 2021, June 3, 2021, and February 15, 2022;

- The birthday cards were signed "Love, Your Romeo" or "Love, Romeo";

- Bevers has changed his hairstyle to mimic her father's and brother's hairstyle and he began driving a vehicle similar to the one her father drives;

–5–

- The Mabrys' security camera captured him driving by multiple times a day for multiple weeks beginning in April 2022;[2]

- Mabry has never met Bevers nor to her knowledge has she had any dealings with him; and

- Bevers's conduct has placed her "in fear of being a target of fixed obsession, and it has created a fear of being a victim of assault or that he will assault my property, my parents, and my parents' property."

The following day, a visiting judge signed a temporary ex parte protective order that set the matter for a hearing via Zoom.

During the May 31, 2022 Zoom hearing, which was before a different visiting judge, Bevers appeared with his attorney who orally moved for a continuance, requesting that the matter be heard by the district judge. Mabry did not oppose the motion. The visiting judge admonished Bevers regarding the terms and conditions of the temporary ex parte protective order, reset the matter for a hearing on June 7, 2022, and instructed Bevers that his presence was required at the reset hearing. Afterward, Mabry filed a motion to extend the temporary ex parte protective order on the basis that Bevers required additional time to prepare for the hearing. The district judge granted the motion and signed an order extending the temporary ex parte protective order and resetting the hearing for June 7, 2022, via Zoom.

At the June 7, 2022 Zoom hearing, Mabry appeared and was represented by the State, and Bevers's attorney appeared; Bevers did not attend the Zoom hearing.

---

[2] We note that at the hearing, Mabry testified she suspected the individual driving by her parents' house was Bevers.

During the hearing, Bevers's counsel muted himself and attempted to call his client but his call went to voicemail. Also, Bevers's attorney admitted that he did not send his client the Zoom link for the hearing because he expected his client to virtually attend the hearing from his office. The trial court proceeded with the hearing. However, later in the hearing, the district judge sua sponte interrupted the proceedings and announced the hearing was in recess until June 16, 2022. Counsel for Bevers responded that he wanted to continue with the hearing, but the district judge impliedly denied his request stating, "We're not all here, and that's part of the reason why the court believes— . . . . believes that it's necessary." The district judge also told the State to file a second motion to extend the ex parte temporary protective order and stated that she would grant it. On June 30, 2022, the Zoom hearing resumed and Bevers was present.

During the hearings, Mabry testified that she had never met Bevers and she had never had any direct person-to-person contact with him. Bevers testified that he had never personally met Mabry and, in response to some questions, he invoked his constitutional right under the Fifth Amendment to assert his privilege against compelled self-incrimination. Also, the investigating detective testified that there was still an ongoing investigation into the matter but the case had not been referred to the District Attorney's Office at the time of the protective-order hearing.

At the conclusion of the June 30, 2023 hearing, the district judge orally rendered her findings and conclusions, finding in part that there were reasonable

–7–

grounds to believe that Mabry was the victim of stalking by Bevers.[3]  Also, on June 30, 2022, the district judge signed a lifetime, confidential protective order against Bevers.  The protective order states that the district judge found probable cause to believe that Bevers has stalked Mabry and the nature of the scheme or course of conduct engaged in by Bevers in committing the offense indicates Bevers is likely to engage in such prohibited conduct in the future.[4]  It also states that it remains in effect until June 30, 2122.

## II.  CONSTITUTIONALITY OF THE STALKING STATUTE

In the first part of issue one, Bevers argues that § 42.072(a) of the Texas Penal Code (the stalking statute) is unconstitutional, based on the inclusion of the terms "harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended."  He appears to rely on *Griswold v. State*, 637 S.W.3d 888 (Tex. App.—Dallas 2021) (*Griswold I*), *vacated* 664 S.W.3d 864 (Tex. Crim. App. 2022) (per curiam) (*Griswold II*), which concluded that the stalking statute was unconstitutionally broad and vague based on the statute's incorporation of such language from Texas Penal Code § 42.07(a) (the harassment statute).  While acknowledging that *Griswold I* was

---

[3] Under Subchapter A, a trial court shall issue a protective order if it finds there are *reasonable grounds to believe* that the applicant is the victim of stalking.  TEX. CODE CRIM. PROC. ANN. art. 7B.003; *Mu v. Tran*, No. 05-21-00288-CV, 2022 WL 1314949, at *1 (Tex. App.—Dallas May 3, 2022, no pet.) (mem. op.).

[4] The trial judge signed a protective order with findings tracking the standard from Subchapter B.  Under Subchapter B, a trial court shall issue a protective order if it finds that *probable cause* exists to believe that an offense under § 42.072 of Texas Penal Code (the stalking statute) was committed and that stalking is likely to occur in the future.  CRIM. PROC. art. 7B.052.

–8–

overruled, Bevers maintains that the concerns raised in *Griswold I* were well-founded, even if rejected by the Texas Court of Criminal Appeals. It appears that he is requesting this Court to revisit the issue.

However, because our decision turns on the intent element of § 42.072(a)(1)(A)—(C) and not the "harass, annoy, alarm" language in §§ 42.07, 42.072(a)(2), or 42.072(a)(3), we decline to re-evaluate the holdings of the Texas Court of Criminal Appeals or the prior holdings of this Court with respect to this issue.

Th first part of issue one is decided against Bevers.

### III. LEGAL SUFFICIENCY OF THE EVIDENCE

In the second part of issue one, Bevers argues the evidence is legally insufficient to prove his identity, that he possessed the requisite intent, or that the alleged conduct would cause a reasonable person to feel harassed.

Mabry responds that, based on the evidence adduced during the hearing, it is reasonable to conclude that Bevers knew or should have known that his conduct would cause alarm, annoyance, or offense because: (1) his behavior was that of a boyfriend; (2) Mabry is a minor celebrity and a fan's appearance at her parents' residence is alarming; (3) he appeared at her parents' house late at night; and (4) he attempted to conceal his identity. Mabry maintains that she was not required to give Bevers notice that his conduct was unwanted or to ask him to stop in order for his conduct to constitute stalking. Also, Mabry argues there was sufficient evidence to

prove Bevers's identity because the district judge could compare the face on the photographs from the Mabrys' security camera with Bevers and determine they were the same person. Further, since Bever invoked his Fifth Amendment privilege against self-incrimination, the district judge could infer that Bevers delivered the flowers and perfume and signed the cards, and his tattoos matched the tattoo depicted on the security video admitted into evidence.

### A. Standard of Review

An appellate court reviews a trial court's decision to grant or deny a protective order under the Family Code for both legal and factual sufficiency of the evidence. *See Thoutam v. Paramkusam*, No. 05-22-00161-CV, 2023 WL 4758462, at *5 (Tex. App.—Dallas July 26, 2023, no. pet.) (mem. op.) (discussing standard under Family Code Title 4). We will apply a similar analysis to a protective order under Chapter 7B of the Texas Code of Criminal Procedure.

When a party who does not have the burden of proof challenges the legal sufficiency of the evidence, an appellate court considers all of the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor, and disregarding contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *see also Gonzalez v. Rigg*, No. 05-20-01041-CV, 2022 WL 2980710, at *2 (Tex. App.—July 28, 2022, no pet.) (mem. op.). An appellate court may not sustain a legal sufficiency, or "no evidence," point unless the record demonstrates: (1) a complete absence of

–10–

evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810; *see also Gonzalez*, 2022 WL 2980710, at *2. If more than a mere scintilla of evidence exists, it is legally sufficient. *Gonzalez*, 2022 WL 2980710, at *2. More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to reach differing conclusions. *Id.*

## B. Applicable Law

The State's application requested a protective order under Code of Criminal Procedure Chapter 7B generally plus Family Code Chapter 85. The application potentially covers four types of protective orders, described by: (1) Title 4 of the Family Code; (2) Chapter 7B of the Code of Criminal Procedure, Subchapter A, protective orders for victims of sexual assault, stalking, or trafficking; (3) Chapter 7B of the Code of Criminal Procedure, Subchapter B, protective orders for when a defendant is appearing at a proceeding relating to a stalking offense; and (4) Chapter 7B of the Code of Criminal Procedure, Subchapter C, protective orders for offenses motivated by bias and prejudice.[5]

---

[5] In this opinion, we cite to the versions of the statutes in effect in 2021–2022 when the underlying conduct was committed and the suit was filed. The Texas Code of Criminal Procedure Chapter 7B, Texas Penal Code §§ 42.07 and 42.072, and Texas Family Code Title 4 were all amended effective September 1, 2023.

A protective order under Chapter 85 of the Family Code is not available because the parties are strangers and were not alleged to be members of a family, household, or dating relationship. *See* TEX. FAM. CODE ANN. §§ 81.001, 71.0021– 71.006. Of the three types of protective orders described in Code of Criminal Procedure Chapter 7B, only Subchapter A applies to the allegations and procedural posture of this case. Subchapter B is not applicable because, at the time the application was filed, there was no proceeding relating to a stalking offense in which a "defendant" was appearing. *See* CRIM. PROC. art. 7B.051(a). Subchapter C is not applicable because no one alleged an offense motivated by bias or prejudice. *See* CRIM. PROC. art. 7B.101(3).

The procedures for Chapter 7B protective orders refer to and overlap with other statutes, incorporating offenses under the Texas Penal Code and procedures in the Texas Family Code. Further, although a protective order under the Texas Code of Criminal Procedure is predicated on the applicant being a victim of a criminal offense, protective-order proceedings are civil proceedings; they are not criminal or quasi-criminal proceedings. *See Mahmoud v. Jackson*, No. 05-21-00302-CV, 2022 WL 2167683, at *4 (Tex. App.—Dallas June 16, 2022, no pet.) (mem. op.) (nothing within Texas Code of Criminal Procedure or Texas Family Code requires criminal conviction to support protective order); *Thoutam*, 2023 WL 4758462, at *5 (discussing standard under Family Code Title 4).

### 1. Invoking the Privilege Against Self-Incrimination in a Civil Proceeding

Parties and witnesses have a constitutional right to assert their privilege against compelled self-incrimination in both civil and criminal proceedings. *Tex. Dep't of Pub. Safety Officers Ass'n v. Denton*, 897 S.W.2d 757, 760 (Tex. 1995); *Ex parte Butler*, 522 S.W.2d 196, 197–98 (Tex. 1975); *see also* U.S. CONST. amend. V; TEX. CONST. art. I, § 10. In a civil proceeding, the privilege is asserted on a question-by-question basis, and it is the trial court's duty to consider the evidence and argument on each individual question to determine whether the privilege against self-incrimination applies. *Butler*, 522 S.W.2d at 198; *In re Lytle*, No. 12-15-00216-CV, 2015 WL 8959428, at *2 (Tex. App.—Tyler Dec. 16, 2015, orig. proceeding) (mem. op.).

However, unlike in criminal proceedings, the fact-finder in a civil case is permitted to make negative inferences based upon the assertion of the privilege. *Wilz v. Flournoy*, 228 S.W.3d 674, 677 (Tex. 2007); *Denton*, 897 S.W.2d at 760; TEX. R. EVID. 513(c); *accord Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). But any negative inference that may be drawn from a witness's invocation of the privilege is permissive, not mandatory. *State for the Protection of P.B. v. V.T.*, 575 S.W.3d 921, 927 (Tex. App.—Austin 2019, no pet.) (citing *Evans v. City of Chicago*, 513 F.3d 735, 741 (7th Cir. 2008)).

Moreover, without some probative evidence as to the elements of the applicant's claims, any negative inference that might be drawn from the respondent's

invocation of his privilege against self-incrimination cannot rise beyond mere suspicion; a negative inference is not a substitute for evidence that would assist the applicant in meeting her burden of proof. *Webb v. Maldonado*, 331 S.W.3d 879, 883 (Tex. App.—Dallas 2011, pet. denied); *accord United States v. Rylander*, 460 U.S. 752, 758 (1983) (assertion of Fifth Amendment privilege has never been thought to be in itself substitute for evidence that would assist in meeting burden of production); *see also Lozano v. Lozano*, 52 S.W.3d 141, 150 (Tex. 2001) (Phillips, C.J., concurring) (discussing authority holding that a negative inference is not sufficient, by itself, to meet an opponent's burden of proof).

### 2. Protective Orders Under Chapter 7B, Subchapter A

A stalking protective order under Subchapter A permits a person to file an application for a protective order without regard to the relationship between the applicant and the alleged offender. CRIM. PROC. art. 7B.001(a). The State may file an application on behalf of a victim. CRIM. PROC. art. 7B.001(a)(3). To the extent applicable, except as otherwise provided by Subchapter A, Title 4 of the Texas Family Code applies to a protective order issued under Subchapter A. CRIM. PROC. art. 7B.008. Collin County has a population less than 3.4 million, so in a "confidential" protective order, the trial court may protect the applicant's mailing address, county of residence, or the prohibited locations. *See* TEX. FAM. CODE ANN. § 82.011; CRIM. PROC. art. 7B.005(b); *cf.* FAM. § 82.010.

The trial court has the discretion to enter a protective order that remains in effect for the duration of the lives of the offender and the victim or for any shorter period stated in the order. CRIM. PROC. art. 7B.007(a); *Mu*, 2022 WL 1314949, at *1.[6] Nothing within the Texas Code of Criminal Procedure or the Texas Family Code requires a criminal conviction to support a protective order. *See Mahmoud*, 2022 WL 2167683, at *4.

### 3. The Stalking Statute

Under Subchapter A, a trial court shall issue a protective order if it finds there are *reasonable grounds to believe* that the applicant is the victim of an offense under § 42.072 of the Texas Penal Code (the stalking statute). CRIM. PROC. art. 7B.003; *Mu v. Tran*, No. 05-21-00288-CV, 2022 WL 1314949, at *1 (Tex. App.—Dallas May 3, 2022, no pet.) (mem. op.).[7] The elements of the stalking statute provide that a person commits the offense of stalking if the person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct that:

> (1) constitutes an offense under Section 42.07 (harassment), or that the actor knows or reasonably should know the other person will regard as threatening:

---

[6] If the offender is convicted of or placed on deferred adjudication for, among other things, an offense under § 42.072 (the stalking statute) and required to register for life as a sex offender, the court *must* enter a lifetime protective order. CRIM. PROC. art. 7B.007(a-1).

[7] *Cf.* CRIM. PROC. art. 7B.052 (under Subchapter B, a trial court shall issue a protective order if it finds among other things that *probable cause* exists to believe that offense under § 42.072 of Texas Penal Code, the stalking statute, was committed).

     (A)    bodily injury or death for the other person;

     (B)    bodily injury or death for a member of the other person's family or household or for an individual with whom the other person has a dating relationship; or

     (C)    that an offense will be committed against the other person's property;

  (2)    causes the other person, a member of the other person's family or household, or an individual with whom the other person has a dating relationship to be placed in fear of bodily injury or death or in fear that an offense will be committed against the other person's property, or to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended; and

  (3)    would cause a reasonable person to:

     (A)    fear bodily injury or death for himself or herself;

     (B)    fear bodily injury or death for a member of the person's family or household or for an individual with whom the person has a dating relationship;

     (C)    fear that an offense will be committed against the person's property; or

     (D)    feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended.

TEX. PENAL CODE ANN. § 42.072(a).

The stalking statute prohibits two types of conduct: (1) conduct that constitutes an offense under the harassment statute, and (2) conduct that the actor knows or reasonably should know the other person will regard as threatening bodily injury, death, or a property offense. *See* PENAL §§ 42.07; 42.072(a). A scheme or course of conduct can include different types of conduct described by § 42.072(a), if done on more than one occasion. *Id*. at § 42.072(c). Repeatedly sending flowers,

–16–

gifts, and cards to an individual can constitute a course of conduct, occurring on more than one occasion, that is directed specifically at another person. *Ploeger v. State*, 189 S.W.3d 799, 808 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (discussing prior version of stalking statute).

In addition to the prohibited conduct, the stalking statute incorporates (1) an intent element, (2) a subjective harm element, and (3) an objective harm element:

(1)     the alleged perpetrator must commit a statutory harassment offense or knowingly threaten bodily injury, death, or an offense against property,

(2)     the victim or others must actually feel fear or other listed feelings, and

(3)     a reasonable person would feel fear or other listed feelings.

PENAL § 42.072(a). Merely being creepy is not sufficient to meet the elements of the stalking statute—the alleged perpetrator's conduct must either meet the statutory elements of harassment or it must threaten bodily injury, death, or an offense against property. *See id*.

### a. Prohibited Conduct—Harassment

A person commits an offense under the harassment statute if, with the intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person:

(1)     initiates communication and in the course of the communication makes a comment, request, suggestion, or proposal that is obscene;

(2)     threatens, in a manner reasonably likely to alarm the person receiving the threat, to inflict bodily injury on the person or to

–17–

commit a felony against the person, a member of the person's family or household, or the person's property;

(3) conveys, in a manner reasonably likely to alarm the person receiving the report, a false report, which is known by the conveyor to be false, that another person has suffered death or serious bodily injury;

(4) causes the telephone of another to ring repeatedly or makes repeated telephone communications anonymously or in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another;

(5) makes a telephone call and intentionally fails to hang up or disengage the connection;

(6) knowingly permits a telephone under the person's control to be used by another to commit an offense under this section;

(7) sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another; or

(8) publishes on an Internet website, including a social media platform, repeated electronic communications in a manner reasonably likely to cause emotional distress, abuse, or torment to another person, unless the communications are made in connection with a matter of public concern.

PENAL § 42.07(a). Threats of physical harm need not be directly expressed and may be contained in veiled statements, but statements that do not allude to bodily injury or another felony are insufficient to satisfy subsection (2) of the harassment statute. *See Wright v. State*, No. 12-07-00045-CR, 2008 WL 5006175, at *5–6 (Tex. App.— Tyler Nov. 26, 2008, no pet.) (mem. op., not designated for publication) (discussing harassment statute and concluding postcards to persons stating, "you're going to Hell," "you . . . will never receive salvation from Jesus," "suffer eternally," and

"tithe and suffer no more" were insufficient to establish harassment by threat of bodily injury or other felony).

The State did not allege that Bevers committed any of the conduct listed in subsection (a)(1)–(8) that would constitute an offense under § 42.07, the harassment statute, so we will continue to analyze whether the State met the remaining elements of the stalking statute.

### b. Prohibited Conduct—Stalking

The stalking statute further prohibits conduct that the actor knows or reasonably should know the other person will regard as threatening bodily injury, death, or that an offense would be committed against her property (the intent element). PENAL § 42.072(a)(1). The conduct must cause the other person, her family, her household, or her significant other to be placed in fear of bodily injury, death, or a property offense, or to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended (the subjective harm element). PENAL § 42.072(a)(2). Additionally, the statute requires that the conduct would cause a reasonable person to feel those same things (the objective harm element). PENAL § 42.072(a)(3).

### c. Intent Element

Under the Texas Penal Code, a person acts knowingly, or with knowledge, "when he is aware of the nature of his conduct" or the circumstances surrounding

the conduct. PENAL § 6.03(b). Also, a person acts knowingly "when he is aware that his conduct is reasonably certain to cause the result." *Id.*

A person's decision to ignore the requests of another person or others to stop the conduct can reveal his knowledge about his conduct. The following examples illustrate this principle:

- *Hoover v. Guillory*, No. 03-21-00421-CV, 2022 WL 3903124, at *4 (Tex. App.—Austin no pet.) (mem. op.) (noting person seeking protective order testified she told person against whom protective order was granted not to contact her but he continued to contact her for more than one year);

- *Teague v. State*, No. 06-14-00053-CR, 2015 WL 2236642, at *12 (Tex. App.—Texarkana May 13, 2015, pet. dism'd) (mem. op., not designated for publication) (concluding evidence sufficient to show defendant knew or reasonably should have known that stalking victim was in fear of him because stalking victim repeatedly informed defendant that she was afraid of him and neutral third parties including law enforcement also communicated to defendant that his behavior was frightening her);

- *Blair v. State*, No. 12-13-00179-CR, 2014 WL 172507, at *4 (Tex. App.—Tyler Jan. 15, 2014, no pet.) (mem. op., not designated for publication) (concluding evidence sufficient to show knowledge where defendant repeatedly ignored requests of stalking victim, her church friends, and law enforcement to stop contacting stalking victim);

- *Allen v. State*, 218 S.W.3d 905, 909 (Tex. App.—Beaumont 2007, no pet.) (holding that jury could rationally conclude defendant's "behavior, which persisted after a police officer warned him to stop, revealed a subjective awareness that his actions had placed the complainant in fear of bodily injury");

- *Maxie v. State*, No. 06-12-00140-CR, 2013 WL 839144, at *4–5 (Tex. App.—Texarkana Mar. 6, 2013, no pet.) (mem. op., not designated for publication) (affirming stalking conviction where

evidence showed defendant went to house at 1 a.m. knowing parents not at home, ignored directive of nineteen-year-old watching her twelve-year-old brother to leave, prevented her from closing door and entered house, and sat in kitchen and refused to leave until she gave him money); and

- *McGowan v. State*, 375 S.W.3d 585, 591 (Tex. App.—Houston [14th Dist.] 2012, pet. ref d) (holding that defendant's pursuing contact after three restraining orders, expressing a desire to hurt the victim, and ignoring law enforcement's repeated instructions to leave her alone revealed his knowledge that the stalking victim would regard his conduct as threatening bodily injury or death).

### d. Subjective Harm Element

The second, subjective element of the stalking statute governs whether the conduct caused the alleged victim, a member of her family, a member of her household, or her significant other to be placed in fear of bodily injury or death or in fear that an offense will be committed against her property, or to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended. PENAL § 42.072(a)(2).

### e. Objective Harm Element

The third, objective element of the stalking statute also requires that the conduct would cause a *reasonable* person to fear bodily injury, death, or a property offense, or to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended. PENAL § 42.072(a)(3). A "reasonable belief" is defined as "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." PENAL § 1.07(a)(42); *see also Williams v. State*, 630 S.W.2d 640, 643 (Tex. Crim. App. 1982) ("ordinary standards of reasonableness" may be defined as

standards that ordinary and prudent person would apply to circumstances actor faced). Evidence of the frequency, escalation, content, unsolicited nature of the actor's conduct, and the actor's displays of anger are factors that a fact-finder may consider when determining whether the actor's conduct would cause a reasonable person to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended. *See Ploeger*, 189 S.W.3d at 811 (discussing prior version of stalking statute and concluding jury rationally could have concluded frequency, escalation, content, unsolicited nature of actor's conduct, and actor's displays of at least some anger would have caused a reasonable person to fear bodily injury or death).

## C. The Evidence is Legally Insufficient to Support the Stalking Protective Order

We start by noting that Bevers invoked his Fifth Amendment right against self-incrimination to the following questions:

Q:     You have previously lived [at 10212 Belfort Drive, Frisco, Texas], Correct?

Q:     Let's show [your tattoos] to the Court.

Q:     June 1st, 2021, did you buy flowers that were delivered to your Belfort or delivered to 10212 Belfort Drive, Frisco, Texas?

Q:     June 1st, 2021, isn't it true that you signed cards writing the word Romeo on them?

Q:     On June 3rd, 2021, isn't it true that you left perfume at 10800 Dry Creek Lane, Frisco, Texas, the location where [] Mabry's parents are?

Q:     You don't remember?  It's been one year and about 29 days and you can't remember what type of car you were driving back in June 2021?

–22–

Even if the trial judge drew negative inferences from Bevers's invocation of his privilege against self-incrimination, those negative inferences cannot rise beyond mere suspicion and are not a substitute for the evidence the State needed to produce to meet its burden of proof. *See Webb*, 331 S.W.3d at 883; *accord Rylander*, 460 U.S. at 758.

The record shows that Mabry testified that she did not know Bevers but determined he was the one leaving the gifts based on an invoice she found in one of the boxes. And she stated that he left gifts of flowers, perfume, and cards signed "Romeo" for her at her parents' house. Also, Mabry stated that she suspected Bevers to be the individual slowly driving by her parents' home on multiple occasions and testified about what was depicted on the security footage from her parents' house. Mabry's father also testified about the gifts left for his daughter at his house and what was depicted on the security video from his residence. However, both Mabry and Bevers testified they had had never personally met, and Mabry stated that she never had any direct person-to-person contact with Bevers.

In this case, the record reflects legally sufficient evidence that Mabry and her family felt annoyed and alarmed. We do not question that the attention Mabry was receiving was unwanted and that Mabry subjectively felt harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended by that attention. *See* PENAL § 42.072(a)(2). However, the stalking statute requires all three elements—intent to do the prohibited conduct, subjective harm, and objective harm—to be proven. *See*

PENAL § 42.072(a) ("and"). To satisfy the stalking statute, Bevers must have knowingly engaged in conduct that threatened bodily injury or death to Mabry or her family or to commit an offense against Mabry's property. *See id*. § 42.072(a)(1); *Wright*, 2008 WL 5006175, at \*4. Bevers argues the evidence is legally insufficient to prove he acted with the requisite mens rea of "knowingly" even if he was the person leaving the packages and repeatedly driving slowly by the Mabrys' house,

There is nothing in the record showing that Bevers's conduct threatened bodily injury or death to Mabry or her family or threatened an offense against Mabry's property. To be sure, threats of harm need not be directly expressed and may be contained in veiled statements. *See Wright*, 2008 WL 5006175, at \*4. But, in this case, the evidence does not show that Bevers ever alluded to bodily injury or another felony. *See id.* \*5–6. Nor, for example, does it show that Bevers entered the Mabrys' house and refused to leave until a demand was satisfied. *See Maxie*, 2013 WL 839144, at \*4–5 (evidence showed appellant made no actual threat but appeared several times at victim's house late at night asking for money, prevented her from closing the door, entered her house, and refused to leave until given money). Without more, there is nothing in the record that reasonably suggests the birthday and other cards signed "Romeo," flowers, and perfume sets with the words "sweet" and "beautiful" were threatening death or bodily injury to Mabry or her family, or harm to Mabry's property. *See id.* Further, we note that Mabry's father

stated that he nonverbally communicated that Bevers's conduct was unwanted when he pursued Bevers and, to his knowledge, Bevers had not returned since.

We acknowledge that there is evidence that Bevers knowingly tried to hide his identity by removing his name from the packaging and left some of the packages at night but, in the context of this case, there is nothing in those actions that would suggest he knowingly engaged in conduct that he reasonably should have known Mabry would regard as threating bodily injury or death or an offense against her property.

Viewing the evidence under the applicable standard of review, we conclude that the evidence is legally insufficient to support the trial court's finding that there were reasonable grounds to believe that Mabry was the victim of stalking because there is a complete absence of evidence to prove Bevers acted with the requisite intent of knowingly threatening to inflict bodily injury or death on Mabry or her family or to commit an offense against Mabry's property under § 42.072(a)(1).

The second part of issue one is decided in favor of Bevers. Accordingly, we need not address whether the evidence was factually sufficient to support the trial court's protective order or issues two through four.

### III. CONCLUSION

The evidence is legally insufficient to support the trial court's protective order.

We reverse the trial court's protective order and render an order denying the State's application for a protective order on behalf of Mabry.

/Emily A. Miskel/
EMILY A. MISKEL
JUSTICE

Partida-Kipness, J., dissenting

220713F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ROBERT CARROLL BEVERS,
Appellant

No. 05-22-00713-CV      V.

PEYTON LYNN MABRY, Appellee

On Appeal from the 417th Judicial District Court, Collin County, Texas
Trial Court Cause No. 417-52953-2022.
Opinion delivered by Justice Miskel. Justices Partida-Kipness and Reichek participating.

In accordance with this Court's opinion of this date, the trial court's confidential protective order is **REVERSED** and an order is **RENDERED** that:

The Collin County District Attorney's Office's application for a confidential protective order on behalf of Peyton Lynn Mabry is DENIED.

It is **ORDERED** that appellant ROBERT CARROLL BEVERS recover his costs of this appeal from appellee PEYTON LYNN MABRY.

Judgment entered February 7, 2024.

–27–